OPINION OF THE COURT
Robert H. Wagner, J.
Petitioner, Harold Back, has made application pursuant to CPLR 3102 (subd [c]) permitting discovery before commencement of an action in order to (1) aid him in the framing of a complaint and (2) identify additional defendants. The respondents[1] oppose the application on various grounds including that the discovery requested is overbroad and burdensome, the *492 petitioner has failed to establish a good cause of action and petitioner has failed to establish the materiality and necessity of the discovery sought. In addition, respondents contend that the First Amendment to the United States Constitution and the New York shield law (Civil Rights Law, § 79-h) bar petitioner’s attempt for discovery.
On May 8, 1979, petitioner, a Rochester police officer, responded to a radio call of a man with a gun at 44 Prospect Street. Upon his arrival at the scene, petitioner was shot at and wounded but managed to return fire, killing his assailant Hiawatha Franklin. A crowd soon gathered as additional police and an ambulance crew arrived to cover the incident. Subsequent newspaper and television reports of the shooting incident form the basis for petitioner’s application for discovery. The nature of the cause of action contemplated is alleged to be defamation in the form of words, pictures, print and broadcast media. Petitioner’s application is directed toward two basic sources, the respondent newspapers and television station.
newspapers By affidavit in support of his application, petitioner cites a ¡Democrat & Chronicle news story of May 9, 1979 in which it was stated:
"two witnesses said the man was laying on the ground when the officer allegedly standing, fired his last two shots.
" 'He could have arrested him’, a man said, 'He was lying on the ground and the cop fired and shot him right in the eye’.”
Petitioner also alleges that a similar story was published on May 9, 1979 in the Times Union and again, the names of the witnesses were unidentified. Petitioner asserts that he needs discovery from the respondent newspapers to (1) properly frame his complaint — that if the sources quoted do not exist or cannot be identified he would tend to frame the complaint as reckless disregard for the truth or knowingly making false statements — (2) to comply with the requirements of CPLR 3016 (subd [a])[2] and (3) to identify additional appropriate defendants.
discovery sought The documents and materials which *493 petitioner seeks for inspection and copy from the respondent newspapers consist of:
"2. Transcripts and summaries of all interviews, as they exist now and prior to this motion, with witnesses, alleged and actual, to the shooting of Mr. Hiawatha Franklin on May 8, 1979.
"3. Written assignments of reporters, staff personnel, independent contractors, film crews, agents and employees during the day the incident involving Harold Dack and Hiawatha Franklin occurred and during thé days in which investigation and reporting continued about this incident.
"4. Written witness statements, oral recordings of witness statements, and tape recordings of witness statements concerning the shooting of Hiawatha Franklin on May 8, 1979”.
television station By affidavit in support of his application, petitioner appears to assert two claims against WHEC-TV and Beni Broadcasting:
1. That WHEC-TV "broadcast various news stories commencing May 8, 1979 each reporting that Hiawatha Franklin had been shot under circumstances suggested to be unjustified, unnecessary or in a manner which constituted a crime under the Penal Law of the State of New York”.
2. "That various broadcast statements alleged that witnesses to the shooting of Hiawatha Franklin advised news reporters that your deponent shot the above in an unnecessary manner or at a time when the above was laying upon the ground unable to pose a threat to your deponent”.
Petitioner alleges "[tjhat there were no such witnesses to the shooting described above” and that "the circumstances described constitute defamation as they were entirely false”. Petitioner asserts he needs the discovery against WHEC-TV in order to (1) properly frame his complaint in accordance with CPLR 3016 (subd [a]) and (2) identify additional defendants inasmuch as the names of the alleged witnesses were not given.
discovery sought Petitioner seeks the same discovery against WHEC-TV and Beni Broadcasting as he does against the newspapers and in addition seeks: "1. Videotapes, edited and unedited, transmitted or not transmitted over the airwaves, of all news broadcasts from May 8, 1979 through May 16, 1979, and all other broadcasts concerning Harold Dack *494 and the shooting of Mr. Hiawatha Franklin on the 8th day of May, 1979.”
CPLR 3102 (subd [c]) provides that "[b]efore an action is commenced, disclosure to aid in bringing an action * * * may be obtained, but only by court order.” This section leaves to the court’s discretion the determination of the extent to which disclosure before suit should be permitted (3A Weinstein-Korn-Miller, NY Civ Prac, par 3102.07).
In a proper case, preaction discovery is available to assist the petitioner in framing a complaint or to identify a prospective defendant (7 Carmody-Wait 2d, NY Prac, § 42:13, p 23). Disclosure may be sought in the proper instance, in order to determine the form that the action should take (see Matter of Pelley, 43 Misc 2d 1082). In order to obtain discovery for the purpose of identifying a prospective defendant or of framing a complaint, a petitioner must show by affidavit that he has a good cause of action (3A Weinstein-Korn-Miller, NY Civ Prac, par 3102.14; L-Tron Corp. v Davco Systems, 60 AD2d 25, 28). In this respect it has been stated: "The party seeking the examination ought to disclose under oath facts which will fairly indicate he has some cause of action against the adverse party. He need not, of course, either name it correctly or state it with technical precision, but as a matter of judicial policy he ought to be required to show, within the frame of rule 122 of the Rules of Civil Practice that the examination he seeks is 'material’ and 'necessary’ to some actionable wrong.” (Stewart v Socony Vacuum Oil Co., 3 AD2d 582, 583.)
Discovery to frame a complaint will not be permitted where what is sought is to ascertain or determine whether facts supporting a cause of action exist (State of New York v Braunstein, 66 AD2d 885), nor where petitioner possesses sufficient information to frame a complaint without the discovery which is sought (Matter of Ryan v Marsh & McLennan Int., 70 AD2d 567; Matter of Simpson [Traum], 63 AD2d 583). Similarly, discovery is not permitted "to explore the feasibility of framing a complaint” (Cotler v Retail Credit Co., 18 AD2d 898).
For purposes of analysis and ease of understanding I will first determine whether petitioner is entitled to the discovery he seeks under CPLR 3102 (subd [c]) against the newspapers and television station and if so, proceed to determine whether the First Amendment to the United States Constitution or the *495 New York shield Law (Civil Rights Law, § 79-h) would bar such discovery.
newspapers The affidavit of Jack Zimmerman, assistant to the executive editor of the Times Union and Democrat & Chronicle, states that there were 11 articles published concerning the incident and they have all been made available to the petitioner.[3] He further states that to the best of his knowledge there are no tape recordings or transcripts of interviews with witnesses to the shooting incident within the possession of the newspapers or its reporters but that some reporters’ notes examined[4] identify by name or description, persons claiming to have witnessed the incident and that some of these notes quote or summarize witness reactions to the incident.
To the extent it is suggested by petitioner that he needs discovery against the newspapers in order to frame a complaint in accordance with CPLR 3016 (subd [a]) such argument is without merit. The particular words which petitioner asserts as the basis for his cause of action for defamation are to be found in the articles which have been made available to him. In fact, in Cabin v Community Newspapers (50 Misc 2d 574, affd 27 AD2d 543), a case cited in petitioner’s memorandum, the court stated that CPLR 3016 (subd [a]) is complied with by attaching copies of the published articles to the complaint.
Petitioner maintains that the newspapers’ printing statements to the effect that he unjustly shot Hiawatha Franklin while the deceased was laying on the ground, which statements he alleges are false, without identifying the sources, indicates that he has a cause of action (defamation) but is entitled to discovery in order to make allegations of malice and reckless disregard in more than a conclusory fashion. As petitioner states in his reply memorandum of law: "Should such sources not exist, it should be apparent that respondents knowingly made false statements which would assist the petitioner in framing his complaint.”
The petitioner’s moving papers fairly indicate that he may have a good cause of action in defamation against the newspapers and/or the unidentified witnesses who are quoted by the *496 newspapers and is not merely seeking to determine whether he has one (see 3A Weinstein-Korn-Miller, NY Civ Prac, par 3102.14; Matter of Roland [Deak], 10 AD2d 263, 264-265).
What petitioner does not know is the identity of the witnesses quoted in the newspaper article. Thus, while petitioner has fairly indicated a good cause of action, he needs discovery to identify potential parties. Under such circumstances, petitioner is entitled to discover the identities of those persons under CPLR 3102 (subd [c]) (see Matter of Banco de Concepcion v Manfra, Tordella & Brooke, 70 AD2d 840; Matter of Houlihan-Parnes, Realtors [Cantor, Fitzgerald & Co.], 58 AD2d 629; Matter of Mintz, 57 AD2d 593; Eastman Kodak Co. v Fotomat Corp., 62 Misc 2d 1025; see, also, Matter of Janosik, 71 AD2d 1058). I hasten to add, however, that the scope of any such discovery is to be limited to the precise issue (see Matter of Sarlo v Sarlo, 52 Misc 2d 547) of the names and identities of the witnesses who allegedly made the defamatory statements which were printed in the newspapers. The disclosure device to be used is an oral examination of the reporters who wrote the articles. The petitioner’s request for all transcripts, summaries, written witness statements, reporter notes, etc., is denied. Such discovery seeks evidence, is overly broad and has not been shown to be material and necessary at this stage of the proceedings. In short, it smacks of a "fishing expedition” which this court will not sanction.
television station The affidavit of Warren Doremus, news director of WHEC-TV, states that to the best of his knowledge WHEC-TV broadcast six newscasts concerning the shooting incident between petitioner and Hiawatha Franklin. These broadcasts were as follows:
1. May 8, 1979 - 10:00 p.m. - One sentence
2. May 8, 1979 - 11:00 p.m. - One minute
3. May 9, 1979 - 6:30 p.m. - Same one minute broadcast
4. May 9, 1979 - 12:00 p.m. - Two and one-half minutes
5. May 9, 1979 - 6:00 p.m. - Same two and one-half minute broadcast
6. May 10, 1979 - 7:30 p.m. - Summary of previous day’s report relating to statement of Police Chief Hastings.
In addition, he states there are 12 to 15 minutes of videotapes *497 from May 8, 1979 not transmitted but that no written record regarding assignment of reporters, staff personnel, independent contractors, film crews, agents or employees are retained.
As previously stated, petitioner claims he needs discovery against WHEC-TV in order to (1) frame a complaint to meet the requirements of CPLR 3016 (subd [a]) and (2) identify additional defendants.
With regard to the television station, petitioner finds himself in a situation different from that with regard to the newspapers. While petitioner has had access to the newspaper articles published concerning the incident in question and thus could show a good cause of action, he has not had access to the statements which were broadcast by the television station. Thus, although petitioner asserts two general claims[5] against WHEC-TV and Beni Broadcasting, he is unable to point to defamatory statements with any specificity. Petitioner has not established a good cause of action against the television station.
Nonetheless, petitioner’s quest for information here is not a pursuit of idle curiosity. At the time of oral argument, counsel for the respondents agreed to deliver transcripts of the broadcast tapes to the petitioner. These transcripts have been provided to petitioner and the court but, unfortunately, appear incomplete. For example, although the present transcript makes references to reports of Andrea Nissen, some of these reports have been excluded. In addition, comments from one Jerry Brock also appear to have been broadcast but not transcribed.
Both the broadcast statements and the published newspaper articles were intended to and did, in fact, report the shooting incident to the general public. Under the circumstances presented here and in the interest of justice, there would seem to be no logical reason why access to the complete broadcast statements should be denied while access to the newspaper articles is freely given. A verbatim transcript of the broadcast tapes, accompanied by a sworn affidavit of Warren Doremus or some other responsible person at WHEC-TV attesting to the accuracy of such transcript, would not only serve to fulfill counsel’s agreement but would be the extent to which this court would now permit disclosure against WHEC-TV.[6]
*498 Petitioner is not entitled to the discovery of unedited tapes, transcripts and summaries of all interviews, written assignments of reporters, written witness statements, etc. Even if petitioner had established a cause of action based on the broadcast statements against WHEC-TV, such discovery would not be material and necessary for petitioner to frame his complaint. In effect, such broad discovery would allow petitioner to hunt about in suspicion that statements, other than those broadcast, may have been made which could give rise to a cause of action against WHEC-TV. In this respect it has been stated that:
"If he does not have a describable sense of the wrong that he thinks hurts him, he ought not be allowed a judicial franchise to penetrate into another party’s affairs, either by examination or inspection, to find out whether he ought to sue or ought not to sue.
"If such a practice be sanctioned, mere suspicion could invoke troublesome and expensive procedures against a party without any need of showing of good cause; and without remedial protection to such a party; and what is perhaps worse, the opportunity for annoyance and intrusion with the aid of judicial power would be quite unlimited. The vaguest sort of apprehension could set in motion legal machinery with heavy impact on a purported adverse party; and there would be nothing vague about the weight of the impact.” (Steward v Socony Vacuum Oil Co., 3 AD2d 582, 583-584, supra.)
To allow petitioner to search through these various documents and tapes of WHEC-TV to determine whether there were any witnesses, other than those quoted on the broadcast tapes, who made statements to WHEC-TV and if so, whether he might have a cause of action based on such statements against those witnesses, would again go beyond the purposes served by preaction disclosure. Petitioner is not seeking the identity of prospective parties from WHEC-TV, upon a showing that he has a good cause of action against such unidentified parties, but rather is seeking the identity of possible parties before suit without any showing that he has a good cause of action against such parties (see Matter of Janosik, 71 AD2d 1058, supra; Matter of Heart Chocolate Co. v Avon Con *499 verting Co., 23 AD2d 844). Accordingly, petitioner’s request for discovery against WHEC-TV, other than the agreed to verbatim transcript of the broadcast tapes, is denied.
Respondents also resist petitioner’s request for discovery on the grounds that "both the First Amendment and the New York shield law bar petitioner’s attempt to discover reporters’ notes or untransmitted video tapes.”[7]
Since it has already been determined that petitioner is not entitled to examine reporters’ notes or untransmitted video tapes, etc., under CPLR 3102 (subd [c]) the applicability of the First Amendment and the New York shield law to these items need not be reached. Further, since respondents’ counsel agreed to supply the transcript of the video broadcast tapes, it is apparent respondents do not raise any First Amendment or New York shield law argument as to such item.
The only discovery permitted is an examination of the reporters to determine the identity of the witnesses quoted in the newspaper articles previously alluded to in order to identify additional defendants. To the extent, if at all, that respondents argue that this very limited disclosure, permitted under CPLR 3102 (subd [c]) is barred by either the First Amendment or the New York shield law, such argument is not persuasive.
first amendment Accepting respondents’ statement of the law that a balancing of the journalist’s privilege against a demand for disclosure depends upon a consideration of a three-part test (see Garland v Torre, 259 F2d 545, cert den 358 US 910; see, also, Silkwood v Kerr-McGee Corp., 563 F2d 433, 438; Carey v Hume, 492 F2d 631, cert dsmd 417 US 938), I would find:
1. There is necessity for disclosure in that the names of the witnesses quoted would permit petitioner to identify additional defendants and thus the disclosure goes to the heart of petitioner’s claim.
2. The public interest in the fair administration of justice, the right to sue in defamation the parties who may be liable but as of now have yet to be identified outweighs the First Amendment interest of the press (see Garland v Torre, supra),[8] and
*500 3. There is no other realistic source from which petitioner can obtain the identity of the witnesses.
While I recognize that compelled disclosure by a journalist is a last resort after other discovery methods have been exhausted, it is difficult here to see any other source for the petitioner to explore. The statements made were apparently made directly to the news reporters and in all likelihood only they, if anyone, have knowledge of the identity of the witnesses.
shield law Section 79-h of the Civil Rights Law states in relevant part:
"(b) Exemption of professional journalists and newscasters from contempt.[9]
"Notwithstanding the provisions of any general or specific law to the contrary, no professional journalist or newscaster employed or otherwise associated with any newspaper, magazine, news agency, press association, wire service, radio or television transmission station or network, shall be adjudged in contempt by any court, the legislature or other body having contempt powers, nor shall a grand jury seek to have a journalist or newscaster held in contempt by any court, legislature or other body having contempt powers for refusing or failing to disclose any news or the source of any such news coming into his possession in the course of gathering or obtaining news for publication or to be published in a newspaper, magazine, or for broadcast by a radio or television transmission station or network, by which he is professionally employed or otherwise associated in a news gathering capacity.”
In order to raise the claim of privilege, two essential elements must be established: "the information or its sources must be imparted to the reporter under a cloak of confidentiality,[10] i.e., upon an understanding, express or implied, that the information or its sources will not be disclosed; and second, that the information or its sources must be obtained *501 in the course of gathering of news for publication.” (Matter of Wolf v People, 69 Misc 2d 256, 261, affd 39 AD2d 864.)
Here, there is no dispute that the second element has been satisfied, leaving for determination the question of the confidentiality of the witnesses’ identity.
"To invoke the privilege the journalist carries the burden of proffering at least preponderant evidence of the mutuality of the understanding, or agreement, of confidentiality. He may do so by direct or indirect evidence, by presenting proof of an express, i.e., a verbalized, understanding or agreement, or by offering preponderant proof of circumstances from which a mutual agreement of confidentiality may reasonably be implied.
"Needless to say, the understanding or agreement of confidentiality is express when the terms thereof have been mutually stated by the principals, i.e., by the informant (i.e., source) and by the journalist. And it makes no difference who requests or offers the requisite confidentiality as long as both principals agree thereon. On the other hand, an understanding or agreement of confidentiality may be implied in fact when, from the acts and conduct of the newsman and his informant (i.e., source), or from custom and usage, or from the circumstances surrounding the imparting or gathering of the news, it is reasonable to conclude that the principals mutually intended that the identity of the source and the substance of the news or information would be maintained confidential.
"Obviously, no implication of confidentiality will exist where the facts and circumstances are inconsistent with its existence, or are inconsistent with the declarations of the informant or source, or are inconsistent with or opposed to the intention or understanding of either or both of the principals, or, generally, where an express or specific agreement of confidentiality of both identity of source and substance of the news clearly exists.” (Matter of Andrews v Andreoli, 92 Misc 2d 410, 418.)
In an attempt to meet the burden of showing confidentiality the respondents submitted two affidavits, one of Brian Rooney and one of Gary Gerew, both reporters for the Democrat & Chronicle. In their affidavits, which are virtually identical, they state that they requested the names of the witnesses they quoted in the May 9, 1979 article in the Democrat & Chronicle. The affidavits read: "4. Despite my request for his name and address, the witness preferred to remain anonymous.”
*502 Respondents’ contention that this statement in the affidavits is ample proof that confidentiality was required by the sources is not persuasive.
Certainly, sufficient direct evidence of any express agreement of confidentiality has not been presented. All that is presented is a bare statement that these two witnesses preferred to remain anonymous. Even assuming, arguendo, that such preference could be considered as a request of confidentiality, there is totally absent any direct evidence of the mutuality of such agreement, that is, that the reporter agreed to withhold the source of his information. "The genesis of the privilege lies only in the anonymity claimed and conñdence given. ” (Matter of Andrews v Andreoli, supra, at p 419; emphasis added.)
Respondents have also failed to offer sufficient proof of circumstances from which a mutual agreement of confidentiality may reasonably be implied.
The affidavits submitted by reporters, Rooney and Gerew, are conspicuous in their absence of any descriptions of the circumstances surrounding the imparting of the witnesses’ statements. Under the facts presented it appears fair to assume that the witnesses’ statements were made to reporters at the scene of the incident and in the midst of a crowd estimated at 150 persons. Police and television crews were also present investigating and questioning people. Under such circumstances and with feelings running as high as respondents themselves reported, it would be unrealistic to imply confidentiality. Suffice it to say that respondents have failed to meet their burden of establishing confidentiality. Moreover, it should be pointed out that respondents have supplied no affidavit whatsoever as to the confidentiality of the witnesses’ identities contained in the May 9, 1979 Times Union article.
Finally, and what appears to be respondent’s real objection, is that they allege they do not know who the two witnesses quoted in the May 9, 1979 article are. The Rooney and Gerew affidavits both state that neither has "personal knowledge of the witnesses’ identity.”[11] Despite such denials as to the knowledge of the identities of such witnesses, petitioner *503 should be offered the opportunity to examine the reporters. Such bare affidavits leave open questions as to the witnesses’ identities which an examination may help to answer, although I recognize it may well turn out at the examination that the reporters do not know the names or any means of identification of the witnesses quoted.
In summary, petitioner’s application for preaction disclosure is denied in all respects except that he may examine the newspaper reporters who interviewed the witnesses and wrote the articles containing the alleged defamatory statements for the purpose of identifying additional defendants. Examination shall proceed at a time and place to be fixed by petitioner in a written notice of not less than 10 days, or at such other time and place as the parties may agree. In addition, pursuant to counsel’s agreement, a verbatim transcript and affidavit attesting to its accuracy of broadcast tapes of WHEC-TV involving this incident will be made available to petitioner no later than two weeks from service of the order to be submitted herein.

. The named respondents are (1) Beni Broadcasting of Rochester, Inc., owner of WHEC-TV, (2) WHEGTV, Inc., (3) Mr. John Winthrop, producer of the six o’clock news on WHEC, (4) Maurice L. Hickey, publisher of the Democrat & Chronicle newspaper, and the Times Union, Rochester Gannett Newspapers, and (5) Gannett Co., Inc.

. This section provides that: "In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally.”

. Respondents have also supplied a copy of these articles to the court as exhibits to Mr. Zimmerman’s affidavit.

. Mr. Zimmerman acknowledges that at the time of the making of his affidavit, not all of the reporters’ notes had been examined.

. See page 493 (supra).

. Upon receipt of such transcript, petitioner should be in a position to state his (n. contd.) *498 cause of action, if any, against the television station and/or others and to properly frame his complaint. Inasmuch as petitioner has yet to establish a good cause of action against the television station, he should not be permitted to now view the videotapes.

. To the same effect is the August 7, 1979 affidavit of Robert H. Giles, executive editor of the Times Union and Democrat & Chronicle.

. The following statement of the situation expressed by the court in Garland (supra, pp 549-550) is also applicable here: “It is to be noted that we are not dealing (n. contd.) *500 here with the use of the judicial process to force a wholesale disclosure of a newspaper’s confidential source of news, nor with a case where the identity of the news source is of doubtful relevance or materiality.”

. While it is true that this section concerns itself with contempt proceedings, it would be a waste of judicial time to decline to decide the applicability of its provisions to the present motion (see Matter of Andrews v Andreoli, 92 Misc 2d 410, 417).

. For a civil case which applied the confidentiality requirement, see Davis v Davis (88 Misc 2d 1).

. Such statement would appear consistent with a May 10, 1979 Democrat & Chronicle article which states: "Two separate reporters were involved in the interviews with witnesses to the shooting who said the officer fired at the man when he was on the ground.” Giles said, "These witnesses would not give their names but we believed their version should be reported.”