**Jeffrey M. BLUM, Plaintiff,**

v.

**John H. SCHLEGEL, et al., Defendants.**

**No. 91–CV–633S.**

United States District Court,
W.D. New York.

July 19, 1993.

Jeffrey M. Blum, pro se.

Douglas S. Cream, New York State Dept. of Law Buffalo, NY, for defendants.

Lawrence J. Vilardo, Connors & Vilardo, Buffalo, NY, for intervenor Avery.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

This case involves the efforts of a former associate professor at the State University of New York at Buffalo (SUNYAB) Law School to be reinstated on the faculty.

This matter has been referred to the undersigned for supervision of all discovery proceedings pursuant to 28 U.S.C. § 636(b)(1)(A). This case has been extensively litigated before this court, and is the subject of many previous orders relating to discovery. Plaintiff's claims are discussed in detail in a report and recommendation dated December 14, 1992 recommending denial of Plaintiff's motion for preliminary relief.

Pending before the court is a motion to quash a subpoena served by Plaintiff upon a law student reporter for *The Opinion*, the newspaper for SUNYAB Law School. For the reasons set forth below, this motion should be granted.

### BACKGROUND

On April 21, 1993, Plaintiff served a non-party "Subpoena for Production of Tape Recording" on Daniel Harris, a student at the law school. The subpoena seeks a tape recording of an interview with the associate dean that was used to prepare an article published in the March 3, 1993 edition of *The Opinion* entitled "Dean Accused of Perjury."

The article describes Plaintiff's charge that Associate Dean Albert committed perjury in an affidavit filed in opposition to Plaintiff's motion for preliminary relief. The article provides Dean Albert's response to the perjury charge. It also contains Dean Albert's views on some of the central issues in the lawsuit.

## DISCUSSION

Harris claims that an absolute privilege applies to the tape under the New York "Shield Law," N.Y. Civil Rights Law § 79–h. That statute provides in relevant part as follows:

> Notwithstanding the provisions of any general or specific law to the contrary, no professional journalist ... shall be adjudged in contempt by any court in connection with any civil or criminal proceeding ... for refusing or failing to disclose any news obtained or received in confidence ... in the course of gathering or obtaining news for publication or to be published in a newspaper ... by which such person is professionally employed or otherwise associated in a news gathering capacity....

Plaintiff claims that he needs the tape recording as evidence of his claims that the law school prematurely decided to terminate him in violation of due process, and that they did so because of his advocacy of controversial positions on issues such as drug policy reform, in violation of the first amendment. He asserts that the Shield Law does not apply because it protects professional journalists only and does not extend to law students working on a campus newspaper as an extracurricular activity for no compensation. He also contends that the taped conversation between Harris and Dean Albert was not received in confidence and therefore is not protected by the Shield Law.

■ The evidence sought by Plaintiff is claimed to be relevant to the federal constitutional violations alleged in his complaint. Accordingly, the privilege asserted by Harris is governed by federal common law, not the Shield Law. *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir.), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987). The law in this circuit is

clear that to protect the important interests of reporters and the public in preserving the confidentiality of journalists' sources, "disclosure may be ordered only upon a clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other sources." *In re Petroleum Products Antitrust Litigation*, 680 F.2d 5, 7 (2d Cir.) *cert. denied*, 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982). Federal courts thus recognize a qualified journalist's privilege against disclosure of the type of information sought by Plaintiff here—namely, the tape recording of the interview with Dean Albert on which Harris' article was based.

The Second Circuit has also recognized that, while federal courts are not bound to follow New York law, the underlying policies of the state Shield Law are congruent with the federal courts' recognition of a journalist's privilege. *von Bulow by Auersperg v. von Bulow, supra*, 811 F.2d at 144; *see also Application of Behar*, 779 F.Supp. 273, 274 (S.D.N.Y.1991). Where the information sought to be protected is shown to be confidential, the protection is absolute. *Lipinski v. Skinner*, 781 F.Supp. 131, 136 (N.D.N.Y. 1991). The burden of proving confidentiality rests with the journalist. *Id.*

■ Plaintiff here argues that Harris' motion should be denied because Harris does not qualify as a "professional journalist" as that term is defined by the New York Shield Law. That definition requires the person seeking protection to be working as a journalist "for gain or livelihood." N.Y.Civ. Rights Law § 79–h(a)(6). Since Harris is a law student working on a volunteer basis, Plaintiff argues that the privilege asserted does not apply.

If state law governed this question, Plaintiff may well be correct. However, at least in this area, the federal privilege appears broader than the protection of the Shield Law. In *von Bulow by Auersperg v. von Bulow, supra*, the Second Circuit rejected a similar argument. The district court ordered a non-party witness, who was not a professional journalist, to produce a manuscript of

an unpublished book she was writing about the criminal trial of Claus von Bulow. In affirming the district court's civil contempt order, the Second Circuit outlined the principles to be used in determining whether, in the first instance, one can claim the journalist's privilege. The Court held that:

> [T]he individual claiming the privilege must demonstrate, through competent evidence, the intent to use material—sought, gathered or received—to disseminate information to the public and that such intent existed at the inception of the newsgathering process. This requires an intent-based factual inquiry to be made by the district court.
>
> The intended manner of dissemination may be by newspaper, magazine, book, public or private broadcast medium, handbill or the like, for "[t]he press in its historical connotation comprehends every sort of publication which affords a vehicle of information and opinion." *Lovell v. Griffin*, 303 U.S. 444, 452 [58 S.Ct. 666, 669, 82 L.Ed. 949] (1938).

*von Bulow by Auersperg v. von Bulow, supra*, 811 F.2d at 144.

Thus, whether a person is a professional journalist is irrelevant. The question is how the person asserting the privilege intended to use the information gathered. Thus, "[a]lthough prior experience as a professional journalist may be persuasive evidence of present intent to gather for the purpose of dissemination, it is not the sine qua non. The burden indeed may be sustained by one who is a novice in the field." *Id.* at 144; *see also Silkwood v. Kerr–McGee Corp.*, 563 F.2d 433, 437 (10th Cir.1977) (non-salaried news reporter entitled to assert privilege); *Apicella v. McNeil Laboratories, Inc.*, 66 F.R.D. 78, 85 (E.D.N.Y.1975) (chief executive officer of technical medical newsletter entitled to assert journalist's privilege against disclosure of source of article recommending withdrawal of drug from market).

Applying these principles to this case, it is clear that Harris is entitled to assert the privilege. Harris' affidavit establishes that he interviewed Dean Albert in order to gather information for an article for the law school newspaper about Plaintiff's case. It is not disputed that the law school newspaper is a "publication which affords a vehicle of information and opinion" within the meaning of *Lovell v. Griffin.*

■ The next question, then, is whether Harris has established that the information on the tape was provided in confidence and therefore entitled to absolute protection from disclosure. I find that Harris has only established a qualified privilege.

Harris asserts in his affidavit that, in interviewing Dean Albert, he assured him that certain information would not be publicized and would remain confidential. It is clear, however, that the overall purpose of the interview was to gather information for an article. The article was in fact published based on information given during the interview. Under these circumstances, the Court cannot find that Harris has convincingly demonstrated that the information contained on the tape is entitled to absolute protection from disclosure. *See Lipinski v. Skinner, supra*, 781 F.Supp. at 136 (mere assertions in affidavit insufficient to supply convincing evidence that confidential information will be disclosed); *see also WBAI–FM v. Proskin*, 42 A.D.2d 5, 344 N.Y.S.2d 393, 394 (3rd Dept.1973) (New York Shield Law affords absolute privilege "only where the information was received under a cloak of confidentiality.").

As set forth above, a qualified privilege can be overcome by a clear and specific showing that the information sought is (1) highly material and relevant, (2) necessary or critical to the maintenance of the claim, and (3) not obtainable from other available sources. *In re Petroleum Products, supra*, 680 F.2d at 7.

■ It is not necessary to address the first two of these requirements because Plaintiff has plainly failed to make a clear and specific showing that the information is not available from another source. To be specific, Plaintiff has not deposed Dean Albert. Plaintiff himself asserts that "by questioning Dean Albert under oath on his precise language plaintiff will be able to establish his theory" that the law school and university administration have adopted a repressive policy regarding freedom of speech

(Item 152, p. 3). He further asserts that he needs the tape of the Harris interview in order to "deter Dean Albert from changing his statements in response to the guidance and induced amnesia that could be provided by attorneys familiar with first amendment law" (*Id.*).

The caselaw in this area is clear. Where the source is known and can be deposed, the availability of a deposition is an alternative source that must be pursued. It is not enough to say that questioning would be futile. The cases clearly establish that "all reasonable attempts should be made to obtain information from non-press sources before there is any consideration of subpoenaing the press." *Branzburg v. Hayes*, 408 U.S. 665, 707 n. 41, 92 S.Ct. 2646, 2669 n. 41, 33 L.Ed.2d 626 (1972) (quoting Guidelines for Subpoenas to the News Media, Dept. of Justice Memo No. 692 (Sept. 2, 1970)); *In re Petroleum Products Antitrust Litigation*, *supra*, 680 F.2d at 8 (plaintiffs failed to question deposition witnesses as to whether oil companies used trade publication to facilitate antitrust conspiracy); *Baker v. F & F Investment*, 470 F.2d 778, 783 (2d Cir.1972), *cert. denied*, 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973) (plaintiffs failed to exhaust available sources of information other than subpoena to discover identity of magazine article author's confidential source).

### CONCLUSION

For the foregoing reasons, Daniel Harris' motion to quash the subpoena is granted.

**SO ORDERED.**