PPM AMERICA, INC., et al., Plaintiffs,

v.

MARRIOTT CORPORATION, J. Willard Marriott, Jr., Richard E. Marriott and Stephen F. Bollenbach, Defendants.

MARRIOTT CORPORATION, Counterclaim Plaintiff,

v.

PPM AMERICA, INC., et al., Counterclaim Defendants.

Misc. No. 8–85 (RWS).
Civ. A. No. 92–3068.

United States District Court, S.D. New York.

Dec. 8, 1993.

See also 820 F.Supp. 970.

Fischer & Burstein, P.C. by Stanley H. Fischer, of counsel, Great Neck, for Daily Insights, Inc.

Latham & Watkins by Michael K. Hertz, New York City, Latham & Watkins by Arne Sorenson, Curtis P. Lu, Anat Hakim, of counsel, for defendants.

## OPINION

SWEET, District Judge.

The Marriott Corporation ("Marriott"), the counterclaimant in this action, has moved by way of Order to Show Cause for an order, pursuant to Rules 37(a) and 45 of the Fed. R.Civ.P. to compel Daily Insights, Inc. ("Daily Insights"), a non-party witness, to answer questions posed to it during a deposition taken by Marriott through counsel on November 16, 1993, and for sanctions. Daily Insights has cross-moved to quash Marriott's subpoena, for a protective order, and for costs. For the reasons set forth below, Marriott's motion to compel is granted and its motion for sanctions is denied. Daily Insights' motions are denied.

### Facts and Prior Proceedings

In October 1992, Marriott announced a stock transaction which would result in two companies, each of which would conduct a portion of Marriott's core businesses. Certain holders of Marriott's debt securities, including PPM America, Inc. ("PPM"), the plaintiffs in this action, brought suit in the District Court of Maryland alleging various federal and state causes of action. The District Court of Maryland set December 13, 1993, as the discovery cutoff date in this litigation.

Marriott has filed a counterclaim for tortious interference with contract against the PPM plaintiffs, alleging that these individuals acted as a group to interfere with its contractual arrangements with its financial advisors. Marriott claims that the Counterclaim Defendants discussed a conspiracy to interfere with Marriott's contractual relations in a telephone conference call on October 9, 1992 (the "Conference Call"). These allegations are based on a partial transcript (the "Transcript") of the Conference Call created by Daily Insights from a tape recording. Daily Insights claims that the tape recording of the Conference Call was lost after the creation of the Transcript.

Based on information contained in the Transcript, Marriott deposed many of the participants in the Conference Call seeking information concerning any tape recording of it. This discovery has failed to reveal the identity of the party who taped the Call.

Marriott subpoenaed Daily Insights in an attempt to authenticate the transcript and to learn who supplied the tape recording of the Conference Call to Daily Insights. Daily Insights was deposed on November 16, and asserted a journalists' privilege as a basis for not answering questions about the operation of its business or regarding the identity of the party who provided the tape recording of the October 9 call.

Since 1990, Daily Insights has produced a daily newsletter (the "Newsletter"), which contains matters of financial interest that have been collected by Daily Insights employees designated as "analysts." Daily Insights claims to have a paid subscriber circulation, and to be a member of a publishers group. *See* Angelowitz Aff. at 2. However, both in the deposition and in the papers submitted here Daily Insights has not provided any facts with respect to its circulation or its methods of distribution or publication.

Argument was heard on the present motions on December 7, 1993, and the motions were considered fully submitted as of that date.

## Discussion

### Federal Law Governs the Scope of any Privileges Claimed in this Case

Before considering the issue of privilege, the governing law must be determined. The

information regarding the underlying action in Maryland is incomplete, but it appears that the Maryland action involves various federal and state claims, while the defendants' counterclaim is for common law tortious interference with contract. *See* Marriott Mem. at 4–7.

Fed.R.Ev. 501 provides, in relevant part, that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness … shall be determined in accordance with State law." The "rationale underlying [this] proviso is that federal law should not supersede that of the States in substantive areas such as privilege absent a compelling reason." Notes of Comm. on the Judiciary, H.R. No. 93–650.

■ This counterclaim is one for tortious interference with contract, a state law claim. However, Section 79–h of the New York Civil Rights Law, which applies to "persons employed by, or connected with, news media," does not create a privilege for journalists. Rather, it forbids the use of the contempt power against individual journalists who refuse to divulge information. Since it does not create a state privilege, it has a limited effect under Rule 501. *See Apicella v. McNeil Labs. Inc.,* 66 F.R.D. 78, 84 (E.D.N.Y.1975). In addition, although this counterclaim is predicated on state law, the plaintiffs' claims are predicated on both federal and state law claims. When cases involve both federal and state claims, asserted privileges are governed by the principles of federal law. *See, e.g., von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 141 (2d Cir.1987) (applying federal law to journalist privilege in case involving state and federal claims); *Lipinski v. Skinner,* 781 F.Supp. 131, 134 (N.D.N.Y.1991) (in case involving state and federal claims, "state privileges are relevant but do not control"). Finally, the result in the present case is identical whether state or federal law on privileges is applied.

### Federal Law Regarding a Journalist Privilege

■ Even if the producers of the Newsletter were found to be journalists, federal law

would require granting Marriott's motion to compel. Federal courts agree that a protection exists which shelters journalists from disclosing confidential sources, but they do not invoke it unless, after balancing competing interests, the scale tips in favor of non-disclosure. On a case-by-case basis, federal courts weigh a reporter's claim to First Amendment protection from forced disclosure against the opposing party's claim to probative evidence. A party can overcome the privilege of a journalist if it shows that the information is material and relevant to the party's claim; is necessary or critical to the maintenance of the claim; and is not obtainable from other available sources. *See United States v. Burke,* 700 F.2d 70, 76–77 (2d Cir.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *In re Petroleum Prods. Antitrust Litig.,* 680 F.2d 5, 7 (2d Cir.), *cert. denied,* 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982).

■ The facts relating to the Conference Call are both relevant and critical to the maintenance of Marriott's counterclaim for tortious interference with contract. Only a partial transcript of this conference call is presently available to Marriott, and obtaining further information regarding the call may be the only way that Marriott could maintain its claim. In addition, in order to authenticate the partial transcript for use at trial, it may be necessary for Marriott to depose the person who made the tape recording from which the transcript was made. Finally, it appears that Marriott has exhausted all other avenues for obtaining information regarding the tape of the call. "[W]here the journalist appears to be the only one with access to information relevant to the case, courts are willing to compel disclosure." *N.L.R.B. v. Mortensen,* 701 F.Supp. 244, 248 (D.D.C. 1988). Applying the principles of federal law, Marriott's motion to compel discovery must be granted.

### The Results Under New York Law Would Be Identical

■ Even if New York law were to apply in this case, the result would be the same. Section 79–h of the New York Civil Rights Law exempts from contempt professional journalists presently or previously employed or associated with any newspaper. Daily Insights bears the burden of demonstrating that it falls within the terms of this statute. *Application of Dack,* 101 Misc.2d 490, 421 N.Y.S.2d 775, 783 (Sup.Ct.1979). The courts of New York construe strictly the applicability of this law. *See New York v. Le Grand,* 67 A.D.2d 446, 415 N.Y.S.2d 252, 254 (1979). Daily Insights has failed to meet its burden of demonstrating its entitlement to the protections of Section 79–h.

■ A "newspaper" for purposes of this statute must be "distributed" not less frequently than once a week. Daily Insights has not disclosed the extent of its "subscriber" base, although its attorney has indicated in court that the Newsletter is sent to far less than 100 "subscribers." This limited circulation may place the Newsletter outside the protections of Section 79–h.

In addition, Section 79–h "evince[s] a clear legislative design to benefit 'professional journalists' and 'newscasters' only. [It] should not by judicial fiat and strained interpretation be deemed to encompass those engaged in a different field of writing and research." *Le Grand,* 415 N.Y.S.2d at 255. The definition of "journalist" is narrower for purposes of this law than the definition of "journalist" for purposes of federal privileges. *See Blum v. Schlegel,* 150 F.R.D. 42, 44–45 (W.D.N.Y.1993).

Daily Insights has not identified anyone holding a position of reporter, editor, or journalist at Daily Insights. Rather, the Newsletter is compiled by Daily Insights' team of analysts prior to being sent to their limited client base. Daily Insights has not born its burden of demonstrating that these analysts are "professional journalists" within the terms of Section 79–h.

Finally, Section 79–h creates an absolute protection only for news obtained or received in confidence in the course of gathering news for publication. Information that was not given in confidence must be disclosed if the party seeking disclosure makes a showing that the material is highly material and relevant, that the information is necessary to the maintenance of the party's claim, defense, or

proof, and that the information is not obtainable from any alternative source. *See* Section 79–h (b) & (c); *see also People v. Lyons*, 151 Misc.2d 718, 574 N.Y.S.2d 126, 129 (Cty. Ct.1991). Unless the identity of the individual who supplied the tape is "confidential," therefore, the qualified protection afforded by Section 79–h(c) may be defeated in the same manner as that provided by federal law. As discussed above, Marriott has made the requisite showing to defeat a qualified journalists' privilege.

"To invoke the [absolute] privilege the journalist carries the burden of proffering at least preponderant evidence of the mutuality of the understanding, or agreement, of confidentiality." *Application of Dack,* 101 Misc.2d 490, 421 N.Y.S.2d 775, 783 (Sup.Ct. 1979); *see also Andrews v. Andreoli,* 92 Misc.2d 410, 400 N.Y.S.2d 442, 448 (Sup.Ct. 1977) ("The genesis of the privilege lies only in the anonymity claimed and the confidence given.").

The only proof Daily Insights offers to demonstrate a mutual agreement of confidentiality is a statement in the Angelowitz Affidavit, which states that "[t]he source has requested and Daily Insights had agreed to keep the identity of the source confidential." Angelowitz Aff. at 2.

In *Application of Dack,* the New York Supreme Court found that two affidavits submitted by journalists asserting that an informant had requested anonymity were insufficient to demonstrate confidentiality, because the affidavits did not indicate that the journalists had promised to maintain confidentiality. *See* 421 N.Y.S.2d at 783. The Angelowitz Affidavit shifts confusingly between the present perfect and past perfect tenses. To state that the source "has requested" and Daily Insights "had agreed" to keep the identity of a source confidential is insufficient to show that there was a mutual agreement of confidentiality at the time that the tape was supplied to Daily Insights. Without this showing, Daily Insights would be entitled to, at most, a qualified protection under Section 79–h, which protection would be defeated by the showing Marriott has made.

*Conclusion*

For the foregoing reasons, Marriott's motion to compel discovery is granted and Daily Insights' motion for an order to quash is denied. As there is no indication of bad faith or complete lack of merit on either side, no costs will be awarded and no sanctions will be applied.

It is so ordered.