**D. Doyle MIZE**

v.

**McGRAW–HILL, INC.**

**Civ. A. No. 76–H–1100.**

United States District Court,
S. D. Texas,
Houston Div.

On Motion For Rehearing March 5, 1980.

Roger R. Wright, Jr., Houston, Tex., for plaintiff.

Richard F. Bergner, Houston, Tex., for defendant.

SINGLETON, Chief Judge.

This defamation action arises out of an article entitled "The Tangled Valhi" published by McGraw-Hill in the August 25, 1975 issue of "Business Week" magazine. On June 11, 1979, this court denied plaintiff Mize's motion to compel further answers to plaintiff's first set of interrogatories, thereby protecting the identity of a confidential source used in preparing the article. Plaintiff moved for a rehearing of the motion to compel, in light of the recent Supreme Court decision, *Herbert v. Lando*, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). Plaintiff also moved that this court certify plaintiff's motion for a rehearing of the motion to compel. However, the court again denies plaintiffs' motion to compel.

In the Memorandum and Order [1] disposing of the original motion to compel, this court outlined two sets of considerations that bear on the issue of compelled disclosure of confidential sources. First, the court set forth a case by case test in which the need for disclosure is balanced against the need for confidentiality to protect the news gathering process. The court derived this test from *Garland v. Torre*, 259 F.2d 545 (2d Cir. 1958) and subsequent cases. *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433 (10th Cir. 1977); *Carey v. Hume*, 160 U.S.App.D.C. 365, 492 F.2d 631 (D.C. Cir. 1974) *cert. dismissed*, 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974); *Baker v. F & F Investment*, 470 F.2d 778 (2d Cir. 1972); *Cervantes v. Time, Inc.*, 464 F.2d 986 (8th Cir. 1972); *Apicella v. McNeil Laboratories, Inc.*, 66 F.R.D. 78 (E.D.N.Y.1975); *Gulliver's Periodicals, Ltd. v. Chas. Levy Cir. Co.*, 455 F.Supp. 1197 (N.D.Ill.1978).

1. Memorandum and Order are published at 82 F.R.D. 475.

Second, the court considered the nature of the pretrial discovery. Specifically, the court examined how much pretrial discovery had been conducted, the fruits of that discovery, and the resulting need for compelled disclosure of reporter's confidential sources. The court extracted this "last resort" principle from *Carey v. Hume, supra* and *Cervantes v. Time, Inc., supra.*

The court denied the plaintiff's motion to compel. It concluded from the record that Mr. Mize sought to compel disclosure as a matter of preliminary discovery, not as a matter of last resort. The court wrote,

There is no evidence in the record of attempts by this plaintiff to discover facts which would prove or lead to proof of the required elements of his claim. None of the courts which have ordered disclosure of a confidential news source have done so on the basis of a relatively barren record such as this. . . . Such paramount competing interests as freedom of the press and a plaintiff's right to develop his case cannot be weighed and balanced in a vacuum.

Memorandum and Order, 82 F.R.D. at 478, June 11, 1979. Hence this court denied the plaintiffs motion to compel without reaching the balancing test.

The plaintiff requested a rehearing of the motion to compel disclosure of the confidential sources in light of the recent Supreme Court decision, *Herbert v. Lando, supra.* The court grants plaintiff's motion for a rehearing, but finds that *Herbert v. Lando* alters neither the standard applied by the court in reaching its original decision nor the decision itself.

*Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), involved a public figure's claim of defamation in a television broadcast and magazine article against the author-editor of the broadcast and article. In order to recover for defamation, a public figure plaintiff must prove that the allegedly damaging falsehood was published with "actual malice." *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). To prepare his case in light of this standard, Herbert deposed the

defendant, asking questions concerning the editorial process and the state of mind of the editors, producers, and publishers. The defendant refused to answer those questions. Plaintiff sought an order to compel answers. The district court granted the motion, rejecting defendant's claim of Constitutional privilege. The court of appeals reversed the district court's decision. The Supreme Court reversed the court of appeals' decision.

At the outset, the Supreme Court stated that the first amendment's guarantee of free speech and free press did not create an absolute privilege, barring the plaintiff from inquiring into the editorial processes of those responsible for the allegedly defamatory publication. Based on that premise, the court considered three factors in deciding that disclosure should be compelled: the nature of the case, the effect of disclosure on the flow of information, and the impact of disclosure on the litigation from the defendants viewpoint.

In the Court's opinion, the state of mind of the editors and writers formed a crucial element of the plaintiff's case. Precluding direct discovery would substantially prevent the plaintiff from establishing his case. Moreover, the Court decided that revelation of the editorial processes would not chill the free flow of truthful information, the paramount public interest at stake and the interest of the publishers. It would only inhibit the malicious publication of falsehoods. Finally, the Court estimated that restricting direct inquiry into the editorial processes would not ease the burden on the press of defending defamation suits. Only complete immunity of the press would substantially reduce the burdens of litigation, but the Court refused to endorse such a measure. Consequently, the Supreme Court upheld the district court order compelling disclosure of the editorial process.

The Supreme Court's decision in *Herbert v. Lando* does not undermine the standard applied by this court or this court's decision denying Mr. Mize's motion to compel disclosure of confidential sources. The absence of an absolute privilege for newspaper edi-

tors and reporters does not imply the absence of a qualified privilege which may be recognized in certain circumstances. Thus, the case by case approach adopted by this court is the appropriate method for disposing of such motions.

The Supreme Court in *Herbert* employed a test balancing the plaintiff's need for the disclosure against the publisher's claim of confidentiality of the editorial process which encompassed both the publisher's and the public's interests in the free flow of information. This court described ostensibly the same test when considering whether McGraw Hill's confidential sources should be disclosed. However, this court did not reach the balancing test in our original decision, due to the paucity of the record regarding discovery.

If asked to reach the balancing test, this court would find the balance tipped in favor of confidentiality of sources. The public figure plaintiff's interest in disclosure of confidential sources resembles his interest in the disclosure of the editorial process: it is crucial to the question of actual malice. As stated in *Garland, supra* at 550, the source of the allegedly defamatory information goes "to the heart of the plaintiff's claim. . . ."

However, the availability of the requested material through alternative discovery distinguishes the inquiry into the editorial process from the disclosure of a confidential source of information. Direct disclosure of the editorial process exposes the thoughts, considerations, and state of mind of editors or writers. At best, indirect evidence is mere shadow of the editorial process. In contrast, the identity of a source of information may be ferreted out without direct disclosure by the press. Through vigorous discovery, a plaintiff may narrow down the field of possible sources and finally pinpoint the actual source. Where the plaintiff is aware of who knew about the transaction or event to which the allegedly libelous statement refers, his task of pinpointing the source is simplified. Thus, the plaintiff's need for disclosure of confidential sources may be slighter than his need for compelled disclosure of the editorial process.

At the same time, the publisher's and the public's interests in the confidentiality of sources surpasses their interest in the confidentiality of the editorial process. In *Herbert*, the Supreme Court explained that disclosure of the editorial process would aid in the free flow of truthful information. It would have this effect because editors would decide against publishing material they knew to be false, if they anticipated that their conversations concerning the material might be disclosed in the course of a lawsuit. Since publication of false information would be discouraged, the public's interest in the free flow of truthful information would be served.

In contrast, the ready disclosure of confidential sources would have a chilling, perhaps freezing effect on the free flow of truthful information. Sources who require anonymity would refuse to disclose information of interest to the public, because they would be afraid that their identity would be revealed, should a defamation suit be instituted. Consequently, disclosure would dam the flow of desirable truthful information at the same time that it would dam the flow of undesirable falsehoods. Ultimately, publication of publicly useful and constitutionally protected information, i. e. truthful statements about public figures or falsehoods published without actual malice, would be inhibited by compelled disclosure of confidential sources.

█ Thus, considering the possibility that plaintiff might learn the confidential source of information through alternative avenues of discovery and the potentially chilling effect of disclosure on the free flow of truthful information, this court finds that, in the abstract, the interest in confidentiality is weightier than the interest in disclosure. The court does not suggest that an absolute privilege should protect the press' sources. As stated above, a case by case evaluation of the various interests is proper. Such an evaluation is appropriate especially since indirect discovery of the source is not always possible. For example, where it is shown that the plaintiff explored other avenues to

**4**

discover the source of information, the court may deem an order to compel disclosure appropriate. (*See, e. g., Garland, supra.*)

 Applying the balancing test to Mr. Mize's request to compel disclosure, this court would deny the motion. As described in our previous memorandum, Mr. Mize engaged in virtually no discovery before requesting disclosure of the confidential source on October 27, 1976. He has engaged in very little discovery since that time. (He submitted an additional set of interrogatories on October 3, 1977.) The plaintiff has not attempted to uncover the source through other avenues. In short, the plaintiff demonstrates no need to resort to the court to compel discovery. At this stage of the proceedings, the plaintiff's interest in disclosure is minimal. On the other hand, the defendant's interest in preserving the confidentiality of its sources is strong. As at all times in the course of litigation, compelled disclosure of confidential sources might chill the flow of information so essential to the freedom and effectiveness of the press. Therefore, the balance tilts in favor of preserving the confidentiality of the McGraw-Hill's reporter's sources. The court sustains its previous decision to deny plaintiff's motion to compel answers to interrogatories that would require disclosure of the defendant's confidential sources.

It is hereby Ordered, Adjudged, and Decreed that plaintiff's second motion to compel answers to plaintiff's first set of interrogatories be, and the same is DENIED.