**Hammer DeROBURT, Plaintiff,**

**v.**

**GANNETT CO., INC., a Delaware Corporation, and Guam Publications, Inc., a Hawaii Corporation, both d/b/a Pacific Daily News, Defendants.**

**Civ. No. 78–0375.**

United States District Court,
D. Hawaii.

Feb. 13, 1981.

Joseph T. Kiefer, Genevieve S. Richardson, Carlsmith, Carlsmith, Wichman & Case, Honolulu, Hawaii, George M. Allen, Majuro, Marshall Islands, Donald C. Williams, Agana, Guam, for plaintiff.

David J. Dezzani, Goodsill, Anderson & Quinn, Honolulu, Hawaii, for defendants.

## DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL DISCLOSURE OF SOURCES

SAMUEL P. KING, Chief Judge.

Plaintiff Hammer DeRoburt filed this suit against Gannett Company, Inc., and its subsidiary, Guam Publications, Inc., on October 2, 1978. Jurisdiction is premised on diversity of citizenship: Gannett is a Delaware corporation with its principal place of business in New York; Guam Publications is a Hawaii corporation with its principal place of business in Guam; DeRoburt is a citizen of Nauru.[1]

Plaintiff alleges defendants have libeled him in two articles published in the *Pacific Daily News*, a daily newspaper printed in Guam by Guam Publications. A May 30, 1978, *Pacific Daily News* article, written by Cisco Uludong and entitled "Marshalls Separatist Movement Gets Secret Funds from Nauru," reported that President DeRoburt personally delivered to the Marshall Islands Political Status Commission a loan made by Nauru in support of separation of the Marshall Islands from Micronesia. The second story, written by Paul Addison and published on June 29, 1978, in the *Pacific Daily News*, was entitled "Nauru Officials Admit

---

1. Nauru is an island republic in the Pacific. Hammer DeRoburt, in addition to being a citizen of Nauru, is also its President; however, he is bringing this suit in his individual rather than in his representative capacity. *See* this Court's Order Denying Defendants' Motion to Dismiss and/or for Sanctions, filed July 22, 1980 (holding plaintiff stated claim in his individual capacity).

Lending Separatists' Loan"; it reported the angry reactions of Nauru officials to the first story, as well as repeating the statements made in that story. Plaintiff DeRoburt alleges that the stories falsely and maliciously accused him of committing serious crimes under Nauru law and of interfering with the internal political affairs of a foreign nation in violation of accepted standards of international diplomacy. His complaint also includes an allegation that the stories were published by defendants "with actual malice, that is, with actual knowledge of their falsity and/or with reckless disregard for whether they were false or not." [2]

On August 31, 1979, this Court, in its Order Denying Motions to Dismiss and for Summary Judgment, ruled that choice of law principles dictate application of the law of Nauru, but only insofar as it does not conflict with the First Amendment, as delineated by *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny. *DeRoburt v. Gannett Co., Inc.*, 83 F.R.D. 574, 579–83 (D.Hawaii 1979). On defendants' motion for summary judgment based on the *New York Times* requirement of "actual malice" in a libel suit brought by a "public official" or "public figure," [3] this Court ruled that plaintiff presented a genuine issue of fact as to falsity of the allegedly defamatory material published by defendants and as to " 'actual malice'—that is, [whether the statement was made] with knowledge that it was false or with reckless disregard of whether it was false or not," *New York Times*, 376 U.S. at 280, 84 S.Ct. at 726.[4]

The case is presently before this Court on plaintiff's July 28, 1980, Motion to Compel Disclosure of Sources, pursuant to Rule 37, Fed.R.Civ.P. Plaintiff seeks disclosure of the reporters' sources for the two news stories on the grounds that that information is relevant and is not privileged, arguing that he is severely hampered in meeting his burden of showing "actual malice" when he is denied critical information from which defendants' state of mind may be inferred. Defendants' arguments against disclosure the Court finds unconvincing.

■ The law of libel has changed dramatically in the last two decades, and the pattern of discovery in libel litigation must change with it. As Justice White observed in *Herbert v. Lando*, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979):

Although defamation litigation, including suits against the press, is an ancient phenomenon, it is true that our cases from *New York Times* to *Gertz* have considerably changed the profile of such cases. In years gone by, plaintiffs made out a prima facie case by proving the damaging publication. Truth and privilege were defenses. Intent, motive, and malice were not necessarily involved except to counter qualified privilege or to prove exemplary damages. The plaintiff's burden is now considerably expanded. In every or almost every case, the plaintiff must focus on the editorial process and prove a false publication attended by some degree of culpability on the part of the publisher. If plaintiffs in consequence now resort to more discovery, it would not be surprising . . . .

*Id.* at 175–76, 99 S.Ct. at 1648. In the course of his dissent in *Herbert*, Justice Stewart set out the elements of a cause of action for libel brought by a public official or public figure:

**2.** Second Amended Complaint, ¶ 21, at p. 16. *Compare with New York Times v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964) (definition of "actual malice").

**3.** The *New York Times* requirement of "actual malice" was extended to libel actions brought by a "public figure" in *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

**4.** Although plaintiff had not conceded that he was a "public official" or "public figure" within the meaning of *New York Times, supra*, and of *Curtis Publishing, supra* note 3, respectively, the Court assumed *arguendo* that he was. Noting plaintiff's prominence and position as President of the Republic of Nauru, *see* plaintiff's Second Amended Complaint, ¶ 1, at p. 1, this Court continues to make that assumption.

Under the constitutional restrictions imposed by *New York Times* and its progeny, a plaintiff who is a public official or public figure can recover from a publisher for a defamatory statement upon convincingly clear proof of the following elements:

(1) the statement was published by the defendant,

(2) the statement defamed the plaintiff,

(3) the defamation was untrue, and

(4) the defendant knew the defamatory statement was untrue, or published it in reckless disregard of its truth or falsity.

441 U.S. at 199–200, 99 S.Ct. at 1661 (Stewart, J., dissenting) (citations omitted).[5] The public official or public figure now has the additional requirement of showing "actual malice" with "convincing clarity," *New York Times*, 376 U.S. at 285–86, 84 S.Ct. at 728. If the plaintiff cannot show that the defendant knew the defamatory statement was false, he must show that the defendant published it with reckless disregard of its truth or falsity. This "subjective awareness of probable falsity," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 335 n.6, 94 S.Ct. 2997, 3004, n.6, 41 L.Ed.2d 789 (1974), the Court defined in *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), as existing when "the defendant in fact entertained serious doubts as to the truth of his publication," *id.* at 731, 88 S.Ct. at 1325, evidence of which may be that "there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports," *id.* at 732, 88 S.Ct. at 1326. If the plaintiff is denied disclosure of the defendant's sources, this avenue of showing "actual

malice" with "convincing clarity" is all but closed to him; the denial would "erect an impenetrable barrier to the plaintiff's use of such evidence on his side of the case . . .," *Herbert*, 441 U.S. at 170, 99 S.Ct. at 1646.

■ Plaintiff DeRoburt's attempts to discover the sources, if any, of the allegedly libelous news stories written by defendants' reporters and published by defendants have met with assertions of a "newsman's privilege" by the reporters and editors plaintiff has deposed.[6] First Amendment protection of a free press underlies the newsman's privilege to refuse to reveal news sources under certain circumstances; however, the privilege is a limited one and may come into conflict with other constitutional values. In *Carey v. Hume*, 492 F.2d 631 (D.C.Cir.), *cert. dismissed*, 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974), a civil libel action in which the public figure plaintiff sought to compel the disclosure of a newsman's sources, the D.C. Circuit observed the tension between the newsman's privilege and the *New York Times* "actual malice" rule:

A civil libel plaintiff who is a public figure must show that the statement at issue was published with actual malice or in reckless disregard of the truth. In the context of an asserted newsman's privilege to protect confidential news sources, the *Sullivan* rule is a source of tension. On the one hand, the Court's concern that the spectre of potential libel actions might have an inhibiting effect on the exercise of press freedom militates against compulsory disclosure of sources. Contrarily, the heavy burden of proof imposed upon the plaintiff in such a case will often make discovery of confidential

---

5. As this Court noted in its decision of August 31, 1979, with the exception of the *New York Times* First Amendment safeguards, libel law in the United States and libel law in Nauru (which is based on the English law of libel) "do not, at this time, appear to conflict," but rather "represent a common commitment to protecting the reputations of their citizenries." *DeRoburt*, 83 F.R.D. at 580. Furthermore, "[b]ecause of the pervasive effect of the First Amendment in the area of defamation of public officials and public figures, it is likely that

there will be little difference in this case whether the First Amendment is applied in conjunction with the law of Hawaii, Guam, or Nauru." *Id.* at 583 n.34. Plaintiffs, who have the burden of pleading and proving the foreign law, *id.* at 582 n.33, have supported these observations by the Court.

6. The Court at this time does not reach the issue of agency with respect to defendants and their employees.

sources critical to any hope of carrying that burden.

*Id.* at 634 (footnote omitted). It is true that *New York Times* and its progeny expanded the protection afforded newsmen by the First Amendment. "These cases rested primarily on the conviction that the common law of libel gave insufficient protection to the First Amendment guarantees of freedom of speech and freedom of press and that to avoid self-censorship it was essential that liability for damages be conditioned on the specified showing of culpable conduct by those who publish damaging falsehood." *Herbert*, 441 U.S. at 159, 99 S.Ct. at 1640. However, when the Court in *New York Times* gave newsmen a "privilege for criticism of official conduct," 376 U.S. at 282, 84 S.Ct. at 727, it was careful to note that "[t]he privilege immunizing honest misstatements of fact is ... a 'conditional' privilege [as distinguished from an] 'absolute' privilege ...," *id.* at 282 n.21, 84 S.Ct. at 727 n.21.[7] Furthermore, the *New York Times* line of cases did not restrict the plaintiff's discovery; rather, those cases "made it essential to proving liability that the plaintiff focus on the conduct and state of mind of the defendants." *Herbert*, 441 U.S. at 160, 99 S.Ct. at 1641.

■ The media defendant cannot have it both ways: he cannot enjoy the protection afforded by the heavy burden imposed upon the public official plaintiff by *New York Times* and at the same time enjoy a privilege that prevents the plaintiff from obtaining the evidence necessary to carry that burden. Were the media defendant allowed to have it both ways, he would have absolute license, and the libel plaintiff would have no recourse in the courts. As the Court stated in *Herbert*, "Only complete immunity from liability for defamation

would [protect the press from the burdens of defamation litigation], and the Court has regularly found this to be an untenable construction of the First Amendment." 441 U.S. at 176, 99 S.Ct. at 1649.

In civil libel actions brought by a public official or public figure plaintiff in which a newsman's privilege is asserted by the media defendant, as is the case in the instant action, courts have used a balancing approach to deal with the conflict between the newsman's First Amendment privilege and the interests of our system of justice. By contrast, in the criminal context in *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the Supreme Court rejected case-by-case balancing, holding that a newsman must reveal his source of information to a grand jury in its good faith investigation of criminal conduct.[8]

In *Garland v. Torre*, 259 F.2d 545 (2d Cir.), *cert. denied*, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958), the Second Circuit held the defendant newswoman in contempt for refusing to disclose her sources in a deposition taken by plaintiff Judy Garland. The court focused on the factor of critical relevance, emphasizing that "[t]he question asked of [defendant] went to the heart of the plaintiff's claim." *Id.* at 550. Balancing freedom of the press against the "courts of justice, armed with the power to discover truth," *id.* at 548, the court concluded that "[i]f an additional First Amendment liberty—the freedom of the press—is here involved, we do not hesitate to conclude that it too must give place under the Constitution to a paramount public interest in the fair administration of justice." *Id.* at 549.[9] In *Cervantes v. Time, Inc.*, 464 F.2d 986 (8th Cir. 1972), *cert. denied*, 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973), in which the court denied plaintiff's motion for com-

---

**7.** The Court in the *New York Times* line of cases has also paid recognition to the interest of the individual in his reputation. *See Herbert*, 441 U.S. at 169, 99 S.Ct. at 1645; *Time, Inc. v. Firestone*, 424 U.S. 448, 457, 96 S.Ct. 958, 966, 47 L.Ed.2d 154 (1976); *Gertz*, 418 U.S. at 348–49, 94 S.Ct. at 3011.

**8.** *See Reporters Comm. v. American Telephone & Telegraph*, 593 F.2d 1030, 1061 (D.C.Cir.

1978), *cert. denied*, 440 U.S. 949, 99 S.Ct. 1431, 59 L.Ed.2d 639 (1979); *Carey*, 492 F.2d at 635–36.

**9.** Although *Garland* predates *New York Times*, the case has enjoyed continued vitality in the Court's post-*New York Times* decisions. *See Carey*, 492 F.2d at 635 n.5.

pulsory disclosure of anonymous news sources on the ground that plaintiff had "wholly failed to demonstrate" actual malice, *id.* at 992, the Eighth Circuit went on to state in dictum that it favored compulsory disclosure "[w]here there is a concrete demonstration that the identity of defense news sources will lead to persuasive evidence on the issue of malice . . . ," *id.* at 994.

In *Carey v. Hume, supra,* a case very close to the instant case, the public figure plaintiff sought disclosure pursuant to Rule 37 of a newsman's sources for an allegedly libelous news column. The Second Circuit distinguished *Branzburg* and followed the approach it had taken in *Garland.* 492 F.2d at 635–36. "That approach essentially is that the court will look to the facts on a case-by-case basis in the course of weighing the need for the testimony in question against the claims of the newsman that the public's right to know is impaired." *Id.* at 636 (footnote omitted). The court noted that "the information sought appears to go to the heart of [plaintiff's] libel action, certainly the most important factor in *Garland*," *id.* at 636 (footnote omitted), that "the identity of [defendant's] sources is critical to [plaintiff's] claim," *id.* at 637, and that the information did not appear to be reasonably available from someone other than the defendant newsman, *id.* at 638–39. The court distinguished *Cervantes* on the ground that the record in *Carey* indicated neither that plaintiff was "so unlikely to meet the admittedly heavy *Sullivan* burden that no purpose would be served by disclosure of the identity of the sources," *id.* at 638, nor that his claim was "without merit," *id.* at 637. Affirming the court below in compelling disclosure, the *Carey* court stated:

> The courts must always be alert to the possibilities of limiting impingements upon press freedom to the minimum; and one way of doing so is to make compelled disclosure by a journalist a last resort after pursuit of other opportunities has failed. But neither must litigants be made to carry wide-ranging and onerous discovery burdens where the path is as

ill-lighted as that emerging from [defendant's] deposition.

*Id.* at 639.

In *Herbert v. Lando, supra,* the public figure libel plaintiff deposed one of the media defendants regarding his state of mind with respect to his sources, in an effort to meet the plaintiff's burden of showing that the defendant " 'entertained serious doubts as to the truth of his publication,' *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968)," 441 U.S. at 156, 99 S.Ct. at 1636. The defendant newsman claimed a First Amendment privilege not to answer, which was rejected by the district court but recognized as an absolute privilege by the Second Circuit. The United States Supreme Court reversed, saying it was "being asked to modify firmly established constitutional doctrine by placing beyond the plaintiff's reach a range of direct evidence relevant to proving knowing or reckless falsehood by the publisher of an alleged libel, elements that are critical to plaintiffs such as Herbert." *Id.* at 169, 99 S.Ct. at 1638. The Court held that where the plaintiff seeks discovery of a "critical element" of his cause of action, *id.* at 170, 99 S.Ct. at 1646, the media defendant's limited editorial privilege must yield to the plaintiff's "demonstrated specific need for evidence," *id.* at 175, 99 S.Ct. at 1649, noting that no absolute editorial privilege had been contemplated by the Court in *New York Times, id.* at 160, 99 S.Ct. at 1641. Dismissing arguments that such a decision would have a "chilling effect" on the press, the Court observed that if such "claimed inhibition flows from the fear of damages liability for publishing knowing or reckless falsehoods, those effects are precisely what *New York Times* and other cases have held to be consistent with the First Amendment." *Id.* at 171, 99 S.Ct. at 1646.

More recently, in *Miller v. Transamerican Press, Inc.,* 621 F.2d 721, *reh. denied, supp. op.,* 628 F.2d 932 (5th Cir. 1980), the Fifth

Circuit held that "the [public figure] plaintiff in a libel suit can compel discovery of the identity of a confidential source of the journalist defendants." 621 F.2d at 722. Relying on *Garland, Cervantes, Carey,* and *Herbert,* the court articulated a three-part test: "(1) is the information relevant, (2) can the information be obtained by alternative means, and (3) is there a compelling interest in the information?" *Id.* at 726.

■ These civil libel cases involving the "actual malice" standard focus on three factors in weighing the plaintiff's and the public's interest in the administration of justice against the defendant's and the public's interest in freedom of the press in order to determine whether the media defendant should be compelled to reveal his sources.[10] First and foremost, is the information sought a "critical element" of the plaintiff's cause of action?; does it "go to the heart" of the plaintiff's case? Second, has the plaintiff "demonstrated specific need" for the evidence?; is the information otherwise not reasonably available to him? Third, has the plaintiff made a showing that his claim is not "without merit"?[11]

■ The circumstances of the instant case argue strongly for disclosure of defendants' sources on the basis of all three factors. First, here, as in the cases discussed above, "actual malice" is a critical element of plaintiff DeRoburt's cause of action. Evidence that defendants had no sources or unreliable sources would be evidence of reckless disregard of the truth. As the court in *Carey* observed, the required showing of "actual malice"

> might be achieved by proof that [defendant] in fact had no reliable sources, that he misrepresented the reports of his sources, or that reliance upon those particular sources was reckless.

Knowledge of the identity of the alleged sources would logically be an initial element in the proof of any of such circumstances.

492 F.2d at 636 (footnote omitted). The allegedly libelous news stories that are the subject of this litigation are "source stories": sentences commence with "Sources say . . .," and plaintiff claims that the most damaging paragraphs are those attributed to sources.[12] Second, plaintiff has amply demonstrated that information regarding defendants' sources is not otherwise available to him: plaintiff's depositions of defendants' employees have met with refusals to disclose, and he has no independent avenues of obtaining the information.[13] Third, plaintiff's claim is not without merit. Plaintiff has withstood defendants' summary judgment motion based on the *New York Times* "actual malice" standard. *DeRoburt,* 83 F.R.D. at 583–85.

■ This Court therefore concludes that it is appropriate to order defendants to disclose their sources in this case.

This Court is aware that its decision to compel media defendants to reveal their sources requires it to consider the issue of enforcement. This Court is persuaded by the approach taken by the New Hampshire Supreme Court in *Downing v. Monitor Publishing Co., Inc.,* 6 Med.L.Reptr. (BNA) 1193 (N.H. May 22, 1980), a case with facts similar to those in the instant case. The *Downing* court, having received plaintiff's offers of proof and concluded that a genuine issue existed as to the falsity of the allegedly libelous news article, stated:

> It is untenable to impose the heavy *New York Times* burden of proof upon a plaintiff and at the same time prevent him from obtaining the evidence necessary to meet that burden. We hold that

---

10. Other civil libel cases have also employed these factors. *See Mize v. McGraw-Hill,* 86 F.R.D. 1 (S.D.Tex.1980); *Schultz v. Reader's Digest Ass'n,* 468 F.Supp. 551 (E.D.Mich.1979); *Gulliver's Periodicals, Ltd. v. Chas. Levy Cir. Co.,* 455 F.Supp. 1197 (N.D.Ill.1978) (libel counterclaim).

11. The "compelling interest" factor in *Miller,* 621 F.2d at 726, appears to encompass this consideration.

12. Plaintiff's Motion to Compel Disclosure, at 2.

13. Plaintiff's Motion to Compel Disclosure, at 3–10.

there is no absolute privilege allowing the press to decline to reveal sources of information when those sources are essential to a libel plaintiff's case.

*Id.* at 1194 (citations omitted). The court continued:

We come to the question of enforcement of the court's order. Of course, the trial court is free to exercise its contempt power to enforce its order. We are aware, however, that most media personnel have refused to obey court orders to disclose, electing to go to jail instead. Confining newsmen to jail in no way aids the plaintiff in proving his case. Although we do not say that the contempt power should not be exercised, we do say that something more is required to protect the rights of a libel plaintiff. Therefore, we hold that when a defendant in a libel action, brought by a plaintiff who is required to prove actual malice under *New York Times*, refuses to declare his sources of information upon a valid order of the court, there shall arise a presumption that the defendant had no source. This presumption may be removed by a disclosure of the sources a reasonable time before trial.

*Id.* at 1195. This Court considers such action within its discretion under Rule 37 and elects this method of enforcement as the one most likely to serve the interests of justice in this case.

Accordingly, IT IS HEREBY ORDERED that plaintiff's Motion to Compel Disclosure of Sources is GRANTED; that defendants are COMPELLED to disclose their sources for the two news stories that are the subject of this libel suit; and that if defendants fail to disclose their sources within 60 days, there shall ARISE a presumption that defendants had no sources, which presumption may be removed by disclosure of the sources within a reasonable time before trial.