**Rodney DANGERFIELD, Plaintiff,**

v.

**STAR EDITORIAL, INC., et al., Defendants.**

No. CV 91–2123 RSWL (Bx).

United States District Court, C.D. California.

March 22, 1993.

**834**

Barry B. Langberg, Bar No. 48158, Joseph M. Gabriel, Bar No. 123716, Langberg, Leslie, Mann & Gabriel, Los Angeles, CA, for plaintiff, Rodney Dangerfield.

Louis P. Petrich, Vincent Cox, Gary M. Grossenbacher, Leopold, Petrich & Smith, Los Angeles, CA, for defendants Star Editorial, Inc., and GP Group, Inc.

Louis P. Petrich, Vincent Cox, Robert S. Gutierrez, Leopold, Petrich & Smith, Los Angeles, CA, for defendant Distribution Services, Inc.

### ORDER

LEW, District Judge.

Plaintiff Rodney Dangerfield has filed a motion to compel responses in the above-captioned action. Defendants Star Editorial, Inc., et al., have opposed the motion. This Court heard oral argument on the matter on March 8, 1993, and took the matter under submission for disposition based on the briefs and argument pursuant to Federal Rule of Civil Procedure 78.

Now having carefully considered the arguments in support of and in opposition to the motion, this Court hereby issues the following order:

Plaintiff's Motion to Compel Responses is **GRANTED.**

### I. BACKGROUND

On March 20, 1991, Plaintiff Rodney Dangerfield filed this libel action against Defendants Star Editorial, Inc., GP Group, Inc., The National Enquirer, Inc., Distribution Services, Inc., Barry Levine, and David LaFontaine. Plaintiff has alleged that the Defendants published an article about him which contained direct quotes attributed to four unnamed sources that the Defendants knew were false, misleading, and defamatory.

The article at issue appeared in the *Star* on September 11, 1990, under reporter David LaFontaine's byline.[1] It is based in part on allegations made in a counterclaim against Dangerfield filed by Caesars Palace casino. Plaintiff has not challenged this part of the article as libelous. The statements at issue describe four incidents involving Dangerfield that occurred at Caesars Palace.[2] Reporter LaFontaine interviewed the confidential sources in Las Vegas.

In the course of discovery, Plaintiff deposed Defendant Barry Levine, the *Star*'s Los Angeles bureau chief at the time of publication, and asked him several questions regarding the editorial decision-making process before publication of the article. Plaintiff also sought the identities of the reporter's sources. Levine refused to answer these questions. Defendants invoked a privilege under the First Amendment of the United

---

1. Reporter David LaFontaine, originally a named defendant in this action, has been dismissed with prejudice by stipulation of the parties.

2. The first employee describes the Plaintiff as "blotto" with a couple of naked women in a flooded hotel room strewn with empty vodka bottles. The second employee states that Plaintiff "appeared to be high" and chased her around his room with ice tongs. The third employee tells about Dangerfield insulting his fans and states that Plaintiff "often acted like a madman. It's incredible that he was even able to perform." The fourth employee said a fan "roughed up" Dangerfield after he made vulgar remarks to a woman in the casino.

States Constitution and under the California Constitution Article I, § 2.[3]

On January 14, 1992, Plaintiff brought a motion to compel responses. The magistrate denied the motion without prejudice and invited Plaintiff to renew the motion to compel after discovery of all non-confidential sources was complete. Plaintiff then took the sworn statements of individuals identified by Defendants as non-confidential sources for the article. None of these sources had personal knowledge of the specific events described in the article or the unnamed sources.

On September 9, 1992, Plaintiff re-filed a motion to compel discovery. The magistrate granted Plaintiff's motion to compel Defendants to respond to deposition and interrogatory questions related to the editorial process. The magistrate denied the motion to compel Defendants to reveal their confidential sources.

Plaintiff's motion to compel disclosure of Defendants' sources now comes before this Court. The thrust of Plaintiff's argument is that the required showing of constitutional malice is virtually impossible to make where Plaintiff is deprived of the opportunity to test the credibility, reliability, and very existence of Defendants' sources. Plaintiff argues the privilege to refuse disclosure should be overridden in this case. Defendants have opposed this motion on the grounds that Plaintiff has not made a sufficient showing to overcome the First Amendment interest in protecting the media's confidential sources.

## II. DISCUSSION

### A. Constitutional Privilege Against Disclosure of Media Sources

In this motion to compel discovery, Plaintiff seeks to override a privilege to refuse disclosure of confidential media sources. Defendants' have asserted a non-statutory privilege based on the broad protections for freedom of the press enshrined in the federal and state constitutions. *See Mitchell v. Superior Court*, 37 Cal.3d 268, 274, 208 Cal.Rptr. 152, 155, 690 P.2d 625, 628 (1984) (finding that defendant journalist must invoke constitutional protection rather than shield law in order to avoid sanctions other than contempt). Federal Rule of Evidence 501 provides that in civil actions brought pursuant to state law, the privilege of any witness shall be determined in accordance with state law. Fed.R.Evid. 501. In this case, the state and federal laws of privilege coincide.[4] *Mitchell*, 37 Cal.3d at 268, 208 Cal.Rptr. at 155, 690 P.2d at 628.

■ The First Amendment and the California Constitution, Article I, § 2(a) guarantee freedom of the press. Federal courts addressing the issue of discovery of media sources in libel actions have found that the First Amendment protection includes a qualified privilege against compelled disclosure. *LaRouche v. National Broadcasting Co., Inc.*, 780 F.2d 1134 (4th Cir.), *cert. denied*, 479 U.S. 818, 107 S.Ct. 79, 93 L.Ed.2d 34 (1986); *Zerelli v. Smith*, 656 F.2d 705 (D.C.Cir.1981); *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583 (1st Cir. 1980); *Miller v. Transamerican Press, Inc.*, 621 F.2d 721 (5th Cir.), *reh'g denied*, 628 F.2d 932 (5th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981); *Carey v. Hume*, 492 F.2d 631 (D.C.Cir.1974), *cert. dismissed*, 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974); *Cervantes v. Time, Inc.*, 464 F.2d 986 (8th Cir.1972), *cert. denied*, 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257

3. Originally, Defendants asserted the California reporter's shield law pursuant to California Evidence Code § 1070 and California Constitution Article I, § 2(b). The shield laws provide that the press cannot or shall not be held in contempt for refusing to disclose a source. Defendants subsequently withdrew this ground for objection.

4. Both parties in this action have asserted the *Mitchell* case as their primary authority in arguing this motion. In that case, the defendant asserted a privilege pursuant to the First Amendment and the California Constitution, Article I,

§ 2(a). The California Supreme Court stated that Article I, § 2(a) parallels the First Amendment for the purposes of a journalist's privilege against disclosure of confidential sources. *See Mitchell*, 37 Cal.3d at 274, 208 Cal.Rptr. at 155, 690 P.2d at 628. The *Mitchell* court then analyzed the issue of discovery of a journalist's sources in a libel action as a First Amendment question. *Id.* at 279–84, 208 Cal.Rptr. at 159–62, 690 P.2d at 632–35. Therefore, this Court's analysis relies on the federal law of constitutional privilege.

(1973); *Garland v. Torre,* 259 F.2d 545 (2d Cir.), *cert. denied,* 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958). The California Supreme Court has held that the state constitution enshrines a correlative protection. *Mitchell,* 37 Cal.3d at 274, 208 Cal.Rptr. at 155, 690 P.2d at 628.

■ The Ninth Circuit has addressed the issue of compelled disclosure of media sources in the context of non-grand jury criminal proceedings. *See, e.g., Farr v. Pritchess,* 522 F.2d 464 (9th Cir.1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1203 (1976) (holding accused's right to fair trial outweighed newsman's interest in protecting sources and privilege must yield). In so doing, the Ninth Circuit acknowledged that the balancing approach established by the Supreme Court in *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), should apply to other civil or criminal judicial proceedings as well. *Farr,* 522 F.2d at 467. Although there is no Ninth Circuit ruling directly on point, the general test adopted in *Farr* requires a court to weigh the claimed First Amendment privilege and the opposing need for disclosure in light of the surrounding facts and strike a balance to determine where the paramount interest lies. *Id.* at 468. This Court has followed the approach endorsed by the Ninth Circuit in *Farr v. Pritchess* and looks to the law in other circuits, decisions by district courts within the Ninth Circuit, as well as the California Supreme Court ruling in *Mitchell* for guidance.

■ These courts have applied traditional First Amendment doctrine which requires that rights secured by the First Amendment cannot be infringed absent a compelling interest. *Baker v. F & F Investment,* 470 F.2d 778, 784 (2d Cir.1972) (citing *Garland v. Torre,* 259 F.2d 545 (2d Cir. 1958)), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973). The cases have developed a balancing test that weighs the First Amendment values protected by a jour-

nalist's privilege against the public interest in the fair administration of justice and the litigant's right to protect his reputation. *Zerelli,* 656 F.2d at 714; *Carey,* 492 F.2d at 634–35; *Garland,* 259 F.2d at 548–49; *Mitchell,* 37 Cal.3d at 276, 208 Cal.Rptr. at 156, 690 P.2d at 629.

■ In the context of a civil libel action brought by a public figure plaintiff, courts have noted that the balance shifts somewhat more in favor of disclosure when the privilege is asserted by a media defendant. *Zerelli,* 656 F.2d at 714; *Bruno & Stillman,* 633 F.2d at 594–95; *Miller,* 621 F.2d at 725; *Carey,* 492 F.2d at 637; *Newton v. National Broadcasting Co., Inc.,* 109 F.R.D. 522, 527 (D.Nev.1985); *DeRoburt v. Gannett Co., Inc.,* 507 F.Supp. 880, 884 (D.Ha.1981); *Gilbert v. Allied Chemical Corp.,* 411 F.Supp. 505, 510 (E.D.Va.1976). The plaintiff faces a heavy burden to prove that the defendant acted with "actual malice" by publishing the material knowing it was false or with reckless disregard of whether it was false. *New York Times Co. v. Sullivan,* 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). In certain situations, the identity of a reporter's sources may be essential to prove this element. *See Zerelli,* 656 F.2d at 714 (stating that proof of actual malice depends on knowing identity of newspaper's informant in order to show that informant is unreliable). However, the cases also make clear that compelled disclosure by a journalist should be a last resort in keeping with the First Amendment requirement to show a compelling interest. *Zerelli,* 656 F.2d at 713; *Riley v. City of Chester,* 612 F.2d 708, 716–17 (3d Cir.1979); *Carey,* 492 F.2d at 639; *Gilbert,* 411 F.Supp. at 510.

■ In order to determine whether the facts in a particular case establish the required compelling interest to override the First Amendment privilege, the federal courts have relied on a test first outlined in *Garland v. Torre.*[5] The factors considered fall into three categories: (1) the litigant's

---

**5.** Although the *Garland* case was decided before *New York Times Co. v. Sullivan,* the Supreme Court has continued to cite to *Garland* which suggests the continuing vitality of that case. *Carey,* 492 F.2d at 635 & 635 n. 5. The Court's continuing post-*New York Times* citations also negate any inference that the Court no longer considers the interest of the defamed plaintiff an important one. *Id.* at 635.

need for the information sought—does it go to the heart of the plaintiff's claim; (2) the availability of alternative sources for the information; and (3) the plaintiff's showing that the claim is not frivolous or without merit. *LaRouche,* 780 F.2d at 1139; *Miller,* 621 F.2d at 726; *Zerelli,* 656 F.2d at 713–14; *Bruno & Stillman,* 633 F.2d at 597–98; *Carey,* 492 F.2d at 636–38; *Garland,* 259 F.2d at 549–51; *Laxalt v. McClatchy,* 622 F.Supp. 737, 749 (D.Nev.1985); *Newton,* 109 F.R.D. at 527; *DeRoburt,* 507 F.Supp. at 886; *Los Angeles Memorial Coliseum Comm'n v. N.F.L.,* 89 F.R.D. 489, 494 (C.D.Cal.1981); *United Liquor Co. v. Gard,* 88 F.R.D. 123, 126 (D.Ariz.1980).[6]

**B. Plaintiff's Interest in Compelling Disclosure**

The nature of Plaintiff's cause of action—a libel claim brought by a public figure in which a media defendant asserts the First Amendment privilege—places it squarely in the realm of cases where disclosure is appropriate. Because Plaintiff seeks the identity of Defendants' sources in order to prove that Defendants acted with actual malice, it is clear that the information sought goes to the heart of the claim. The parties have placed two factors at issue: the merits of Plaintiff's libel claim and the availability of alternative sources for the information.

**1. *The merits of Plaintiff's libel claim:*** On the question of the merits of the libel claim, the caselaw does not present a clear or uniform standard to evaluate a plaintiff's case. Some federal courts require only that the claim is not frivolous. *Zerelli,* 656 F.2d at 714; *Garland,* 259 F.2d at 551. Others focus on the element of falsity and require that the plaintiff raise a triable issue of falsity. *See, e.g., Bruno & Stillman,* 633 F.2d at 597; *Miller v. Transamerican Press, Inc.,* 628 F.2d 932 (5th Cir.) (requiring substantial evidence of falsity), *supplementing,* 621 F.2d 721 (5th Cir.1980), *cert. denied,* 450

U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981). The California Supreme Court requires a prima facie showing of falsity. *Mitchell,* 37 Cal.3d at 283, 208 Cal.Rptr. at 161, 690 P.2d at 634. A few federal courts look at whether the plaintiff has made some showing of actual malice. *Carey,* 492 F.2d at 637 (looking at whether claim is "so unlikely to meet" *New York Times* burden of proof); *DeRoburt,* 507 F.Supp. at 886 (finding plaintiff withstood summary judgment motion on "actual malice" standard).

Based on the evidence before the Court, Plaintiff has shown that his libel claim has merit under any of these standards. Plaintiff has clearly made a prima facie showing of falsity by submitting his deposition testimony that the events in the article did not occur. Moreover, Plaintiff has raised a triable issue of falsity. Sworn statements from fifteen of Defendants' non-confidential sources reveal that none have personal knowledge of the events described in the article. The Caesars Palace employee who did the repairs in Dangerfield's room after it was flooded could not verify the incident described in the *Star* article. Defendants admit that they learned after publication that Dangerfield did not chase a Caesars Palace employee around his room with a pair of ice tongs. This evidence is sufficient to controvert Defendants' circumstantial evidence that the article is true and to create a genuine fact issue for trial.[7]

Defendants maintain that Plaintiff's claim lacks merit because circumstantial evidence of similar conduct by Dangerfield on other occasions allows for an inference that the "substance," "gist," or "sting" of the alleged defamation is true. Defendant further argues that because Plaintiff's reputation was sullied before the publication of the *Star* article, he cannot prove that the article injured his reputation. Neither of these arguments persuades this Court that Plaintiff has failed to meet any of the standards used to determine the issue of compelled disclosure.

---

6. The five factors considered by the California Supreme Court in *Mitchell* were drawn from this same body of federal caselaw. *See Mitchell,* 37 Cal.3d at 276, 279–83, 208 Cal.Rptr. at 156, 159–61, 690 P.2d at 629, 632–34.

7. Defendants have argued vigorously that Plaintiff has shown no likelihood of success on the merits. However, the Court notes that Defendants have not brought a motion for summary judgment on any of the elements of Plaintiff's libel claim.

Nor is Plaintiff's claim frivolous in the sense that Plaintiff is so unlikely to meet his *New York Times* burden. The present pretrial record discloses no thorough investigation of the statements prior to publication. *See Miller,* 621 F.2d at 726 (finding compelling interest in disclosure of sources where record did not disclose thorough investigative effort by defendant). The only evidence regarding preparation of the article is Defendant Levine's testimony that he sent LaFontaine to interview Caesars Palace employees. Levine testified that LaFontaine transmitted the quotes from his interviews to the bureau chief, and Levine believed that everything he published was correct. However, Defendants have admitted that Lafontaine disagreed with Levine's testimony on these points. Thus, even without disclosure of the sources, the record includes some evidence relevant to a showing of actual malice.

■ 2. *Exhaustion of alternative sources:* On the question of alternative sources for the information, the federal courts look at whether a libel plaintiff has other means to discover the identity of a confidential source, *Carey,* 492 F.2d at 638; *Garland,* 259 F.2d at 551; *Mitchell,* 37 Cal.3d at 282, 208 Cal.Rptr. at 161, 690 P.2d at 634, or other sources of evidence to prove actual malice. *Miller,* 621 F.2d at 726; *Mitchell,* 37 Cal.3d at 282, 208 Cal.Rptr. at 161, 690 P.2d at 634. The *New York Times* standard and logic point toward a requirement that a libel plaintiff exhaust both. First, such a showing is more protective of the media defendant's First Amendment rights. Second, the focus under *New York Times* is on the publisher's state of mind. A libel plaintiff seeks the identity of confidential sources in order to test their veracity and reliability or determine whether such sources exist. Evaluation of the source provides indirect evidence of the publisher's state of mind. Logic requires that a libel plaintiff must also pursue direct evidence of actual malice through inquiry into the thoughts, opinions, and conclusions of the publisher. *See Herbert v. Lando,* 441 U.S. 153, 169–71, 99 S.Ct. 1635, 1645–46, 60 L.Ed.2d 115 (1979) (stating that evidence of editorial process is essential to proving actual malice with "convincing clarity"). Plaintiffs may rarely be successful in proving aware-

ness of falsehood from the mouth of the defendant, but the relevance of the answers to such inquiries cannot be doubted. *Id.* at 170, 99 S.Ct. at 1645.

■ This Court finds that Plaintiff has exhausted alternative sources for the information sought. Plaintiff made extensive efforts to identify the unnamed sources through other means. Defendants identified twenty non-confidential sources for the allegedly libelous article. Plaintiff took sworn statements from all who were available, and none had personal knowledge of any of the incidents described in the *Star.* Plaintiff deposed the entertainment director at Caesars Palace and pursued other leads that resulted from that testimony also to no avail.

In order to assess the Defendants' awareness of falsity, Plaintiff deposed Defendant Levine, the *Star* bureau chief at the time of publication and the final decisionmaker regarding the material printed in the article. Levine answered questions regarding his instructions to and conversations with the reporter. He testified that he believed that everything in the article was correct. Plaintiff did not depose the reporter LaFontaine because Plaintiff had learned through discovery that he had limited involvement in the production of the article. This Court finds it troubling that Plaintiff failed to exploit such an obvious source for evidence relevant to prove actual malice. However, in the context of this case, Plaintiff's decision not to depose the reporter is not determinative.

First, Plaintiff did pursue evidence regarding the editorial process by deposing Defendant Levine. Second, the nature of the article at issue makes the identity of the confidential sources nearly essential to prove actual malice. The *Star* published twenty-one paragraphs of which twelve are explicitly based on the comments of unnamed employees. Eleven of those paragraphs are made up entirely of direct quotations. The preparation of the article consisted of dispatching a reporter to Las Vegas to ferret out eyewitness accounts of Dangerfield's behavior. It is not the type of article that involved a great deal of investigation, research, or fact-checking which would make the editorial process

much more of a focal point of the inquiry. In a case such as this one, the veracity, reliability, and the very existence of these eyewitnesses becomes paramount, and the importance of the steps taken in the editorial process is minimized as evidence of actual malice. Accordingly, Plaintiff would be too greatly prejudiced in his ability to prove up his libel claim without access to the Defendants' confidential sources.

In sum, the balance tips in favor of compelling the Defendants to disclose the identity of their sources. This Court notes the importance of protecting confidentiality in this case. The *Star* article describes the unnamed sources as Caesars Palace employees. As such, the risk of harm of losing their jobs for providing such information to the press could be great. The record is silent as to whether the sources still work at Caesars Palace, however this Court will protect these sources by restricting the information about their identities to counsel and requiring that it be used strictly for the purposes of this litigation.

**IT IS SO ORDERED.**