Carolyn CONDIT, Plaintiff,

v.

NATIONAL ENQUIRER, INC., et al, Defendants.

No. CV–F–02–5198 OWW LJO.

United States District Court, E.D. California.

June 20, 2003.

Brian Anthony Rishwain, Johnson and Rishwain LLP, Los Angeles, CA, Rodney Smolla, University of Richmond, T C Williams School of Law, Richmond, VA, for Carolyn Condit, plaintiff.

Bruce Alan Owdom, Dietrich Glasrud Mallek and Aune, Fresno, CA, Adam Lindquist Scoville, Pro Hac Vice, Thomas B Kelley, Pro Hac Vice, Steven D Zansberg, Pro Hac Vice, Faegre & Benson, Denver, CO, Michael B Kahane, Pro Hac Vice, American Media Inc, Legal Affairs Department, Boca Raton, FL, for National Enquirer Inc, American Media, Inc., defendants.

### ORDER ON PLAINTIFF'S MOTION RE JOURNALIST PRIVILEGE

ONEILL, United States Magistrate Judge.

Plaintiff Carolyn Condit moves for an order overruling the confidential journalist privilege objection stated in response to Interrogatory No. 9, in response to Document Request no. 7,8,12, and 13, and to order defendants to identity its confidential sources in supplement disclosures pursuant to Rule 26, along with other remedies. On June 12, 2003, the parties lodged their Joint Statement Re Discovery Disagreement and accompanying exhibits, which were filed with the Court on June 16, 2003. The motion came on for hearing on June 20, 2003 at 8:30 a.m. in Department 6 of this Court. Plaintiff Carolyn Condit appeared by counsel Neville Johnson of Johnson & Rishwain. Defendants National Enquirer, Inc. and American Media, Inc. appeared by counsel Thomas Kelley of Faegre & Benson and by counsel Bruce Owdom of Dietrich Galsrud Malleck and Aune. On June 19, 2003, plaintiff filed a document entitled "Supplemental Authority and Evidence" in conjunction with this motion. As these papers are untimely pursuant to Local Rule 37–351, the Court elects not to consider the supplemental papers. The papers were filed after 11:00 a.m. the day before the hearing and received in chambers after 3:00 p.m. In addition, full deposition transcripts were attached without reference to any specific portions. Having considered the parties' Joint Statement re Discovery Disagreement, as well as the extensive arguments of counsel and the Court's file, the Court issues the following order.

### FACTUAL BACKGROUND

On August 13, 2002, National Enquirer served its initial disclosure under Article I, Section 2 of the state Constitution, Evid. Code § 1070 and the 1st and 14th Amendments to the Constitution. National Enquirer asserted the privilege for both the identity of witnesses and documents.

Plaintiff asked for documents relating to the creation of the article, editorial files, related documents and documents relating to the September 4, 2001 article. (Doc. Requests no. 7, 8, 9, and 10.) As to each document request, National Enquirer stated:

"Defendant objects to this Request fo Production of Documents on the following grounds: it seeks information that is protected under Article 1, Section 2 of the California Constitution and Cal.Evid. Code section 1700, the First and Fourteenth Amendments to the Constitution of the United states, and analogous privileges under the common law. Without waiving that objection in any way, the defendant will produce documents responsive to this Request, with confidential source information redacted".

In answer to interrogatory No. 11, which asked for names of law enforcement representatives with the National Enquirer had interviews, the National Enquirer objected on the grounds it did not know who were investigating the disappearance of Chandra Levy.

On February 25, 2003, defendant disclosed one of its confidential sources—Armstrong Williams—who testified at a later deposition that he was not the source who told the reporters that Carolyn Condit had a phone call with Chandra Levy.

Plaintiff seeks to compel the "justice department source" who provided information to National Enquirer reporter Charles Montgomery. This source has been designated CM–1.

## ANALYSIS & DISCUSSION

### Overview of the Journalist's privilege

In the seminal case of *Branzburg v. Hayes,* 408 U.S. 665, 680–82, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the Supreme Court held that the First Amendment protects the right of the press to gather news and information. The Ninth Circuit has interpreted *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), as establishing a qualified privilege for journalists against compelled disclosure of information gathered in the course of their work. *See Shoen v. Shoen,* 5 F.3d 1289 (9th Cir.1993) ("*Shoen I* "). "Rooted in the First Amendment, the privilege is a recognition that society's interest in protecting the integrity of the news gathering process, and in ensuring the free flow of information to the public, is an interest 'of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice.'" *Id.* at 1292. In *Shoen v. Shoen,* 48 F.3d 412 (9th Cir.1995) (*Shoen II* ) the Ninth Circuit clarified the test to overcome the journalist's privilege. In *Shoen II,* the Court cautioned that "routine court-compelled disclosure of research materials poses a serious threat to the vitality of the news gathering process." *Id.* at 416. In *Shoen II,* the court stated the test as:

We therefore hold that where information sought is not confidential, a civil litigant is entitled to requested discovery notwithstanding a valid assertion of the journalist's privilege by a nonparty only upon a showing that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case. *Shoen II,* 48 F.3d at 416.

In *Shoen II,* the informant did not require confidentiality. In *Shoen II,* however, the court cited with approval the test adopted by the Second Circuit for determining when a confidential source may be disclosed:

"Leonard Shoen was neither a confidential source nor did he insist that the details of his discussions with Watkins not be disclosed. No circuit has adopted an explicit test applicable where the information sought from a journalist is not confidential. Instead, the cases setting forth tests for determining whether the needs of a civil litigant should prevail over the privilege involve confidential informants. The Second Circuit, for example, applies the following conjunctive test for determining whether a journalist must disclose a confidential source in a civil case: disclosure may be ordered only upon a clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources."

*SShoen II* citing *In re Petroleum Products Antitrust Litig.,* 680 F.2d 5, 7 (2d Cir.), *cert. denied,* 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982); also citing *LaRouche v. National Broadcasting Co., Inc.,* 780 F.2d 1134, 1139 (applying similar three-part test); *Miller v. Transamerican Press,* 621 F.2d 721, 726, *supplemented,* 628 F.2d 932 (5th Cir.1980) (same), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981).

■ Similarly, under Article 1, § 2 of the California Constitution, California protects the reporter's confidential sources. A reporter, editor or publisher may have a constitutional privilege to withhold both his or her sources and unpublished information obtained from such sources in civil litigation. This privilege is designed to protect investigative reporting, and is based on the "free press" guarantees of the First Amendment and correlative provisions of the California Constitution. *Mitchell v. Sup.Ct. (Synanon Church)*, 37 Cal.3d 268, 274, 208 Cal.Rptr. 152, 690 P.2d 625 (1984). The Court in *Mitchell* balanced five factors to determine whether disclosure of the confidential source is appropriate. Those factors are:

— *Nature of the litigation*, and whether the reporter is a party. (The privilege will more likely be upheld in criminal proceedings than civil, and where the newsperson is *not* a party to the litigation.)

— Whether the *information "goes to the heart"* of plaintiff's claim (i.e., mere relevance is not enough).

— Whether plaintiff has *exhausted all alternative sources* for obtaining the information sought (compulsory disclosure being "the last resort").

— Any *public interest* in protecting confidentiality of the source. (E.g., there is a strong public interest in revelation of wrongdoing in public affairs, and in protecting the "whistleblower" from retaliation.)

— Finally, the court may require plaintiff to make a *prima facie showing* that the alleged defamatory statements were false before requiring disclosure. (While not a prerequisite, it may "tip the balance" in favor of discovery.)

*Mitchell v. Sup.Ct. (Synanon Church)*, 37 Cal.3d at 283, 208 Cal.Rptr. 152, 690 P.2d 625.

Here, the parties agree that the determination of the privilege is a case-by-case evaluation based on certain factors. Defendants argue that the factors are determined under both federal and state law while plaintiff argues the factors are determined under state law (i.e., *Mitchell*.) The primary factors that are disputed between the parties are whether plaintiff satisfied the "exhaustion" requirement and whether the information "goes to the heart" of plaintiff's claims.

**Exhaustion**

In the present matter, the parties dispute whether Mrs. Condit has satisfied the exhaustion requirement. Plaintiff argues that she has exhausted all reasonable alternative sources. Plaintiff has followed all reasonable leads by deposing or obtaining declarations from all persons listed in defendant's initial disclosure. Defendant argues Mrs. Condit has not exhausted available sources because she has not sought to investigate or depose any representatives of law enforcement agencies, including the police force or Justice Department.

Defendant cites *Zerilli v. Smith*, 656 F.2d 705 (D.C.Cir.1981) for the proposition plaintiff has to exhaust all sources which may require as many as 60 depositions. However, *Zerilli* did not require this many depositions. In *Zerilli*, defendant has disclosed four names of persons who had the most information and a list of persons who had seen the disputed information. Plaintiff made no attempt to depose or investigate any of the information these persons had. Thus, the *Zerilli* court found that plaintiff had not exhausted the alternative sources. The *Zerilli* court noted that "reporters should be compelled to disclose their sources only after the litigant has shown that he has exhausted every reasonable alternative source of information." *Id.* at 714. The court said "To be sure,

there are some limits to the obligation to pursue alternative sources." The court pointed to *Carey v. Hume*, 492 F.2d 631, 636 (D.C.Cir.), where the reporter had stated that his source was an employee of the national headquarters of the United Mine Workers of America. The *Carey v. Hume* court held the litigant need not have deposed every one of the UMWA's employees, but the exhaustion "obligation is clearly very substantial." The court suggested that an alternative requiring the taking of as many as 60 depositions might be a reasonable prerequisite.

The Ninth Circuit has cited *Zerilli* with approval in *Shoen I* and *Shoen II. Shoen II*, 48 F.3d at 416 (requesting party must show exhaustion of all reasonable alternative sources and that the information sought is "crucial to his case."); *accord Shoen I*, 5 F.3d at 1296. Thus, plaintiff's requirement of exhaustion requires investigating all "reasonable alternative sources." See *Dangerfield v. Star Editorial, Inc.*, 817 F.Supp. 833, 838 (C.D.Cal.1993) (the court found "troubling" that the plaintiff failed to "exploit [ ] an obvious source for evidence," when the plaintiff neglected to depose the reporter who interviewed the informant.); *Rogers v. Home Shopping Network, Inc.*, 73 F.Supp.2d 1140 (C.D.Cal. 1999) (Plaintiff did not exhaust all alternative sources—failing to investigate all eyewitnesses or pursued all other leads that resulted from deposition testimony).

Plaintiff has asked the Court to overrule defendants' privilege as to all confidential sources. The only evidence before the Court is as to the confidential source CM–1 who provided information about the alleged telephone call between Chandra Levy and Mrs. Condit. Plaintiff does not provide any evidence as to exhaustion into the identity of other confidential sources. For instance, defendant claims as a confidential source a person who informed the Enquirer that the Levy's spent $200,000 in an investigation for their daughter. (See TAB D, p. 86–87.) Plaintiff has not shown she has exhausted all reasonable alternatives as to these other confidential sources. The only focus of the motion by plaintiff is as to the identity of CM–1.

In addition, at oral argument, plaintiff argued that disclosure of the confidential sources for National Enquirer reporters Courtney Callahan and David Wright are at issue in this motion. To the contrary, the Joint Statement of Discovery Disagreement did not raise disclosure of these reporters' sources. Plaintiff's untimely "Supplemental Authority and Evidence," filed on June 19, 2003 first raised this issue. The Court has elected not consider the late filed papers. Accordingly, the issue of the confidential sources for Courtney Callahan and David Wright are not properly before the Court.[1]

Defendant has disclosed information related to CM–1 as an individual within the United States Department of Justice. The article itself refers to the source as a justice department source. (August 7, 2001 article, para. 25.) The Defendant attaches notes of editor Charlie Montgomery who interviewed CM–1, who is identified as a "Justice Department source." (Tab E.) The notes have apparently been produced in conjunction with this lawsuit. The notes indicate that CM–1 said "one of the scenarios police are investing is that Mrs. Condit had a verbal confrontation with Chandra when she called her husband's apartment and Levy answered the phone." (Tab E.) Defendant argues that this infor-

---

1. Defendant also argued that if these confidential sources were before the Court, the Court would necessarily need to apply Washington D.C.'s journalist privilege, as this is the location of both reporters, and which provides an *absolute* as opposed to *qualified* privilege.

mation was treated as a lead and the story did not evolve until specific information was provided by Armstrong Williams. (Tab F—notes of interview with Armstrong Williams—"Source A told the Enquirer investigators are calling it the 'blow up phone call.'")

■ Plaintiff does not present any evidence of attempts to locate the source or at least the names of persons in the Justice Department. Plaintiff presumes it would be burdensome to inquire. At oral argument, plaintiff rhetorically asked if plaintiff was required to take "ten depositions." Plaintiff is not required to depose everyone in the Justice department to locate the source, but plaintiff must make some reasonable attempt to exhaust that alternative source. *Carey v. Hume*, 492 F.2d 631, 636 (D.C.Cir.) (Plaintiff is not required to depose everyone at an organization). There is no evidence before the Court that plaintiff has made *any* attempt to investigate within the Justice Department or any other law enforcement agency. Thus, absent this evidence, the Court cannot conclude that plaintiff investigated all "reasonable alternative sources."[2]

At oral argument, plaintiff argued that the privilege not to disclose the confidential source "basically goes away" when a publisher is sued for defamation, as opposed to the case where the publisher is a third party, citing *Blum v. Schlegel*, 150 F.R.D. 42 (W.D.N.Y.1993), *Los Angeles Memorial Coliseum Comm'n*, 89 F.R.D. 489 (C.D.Cal.1981) and *Silkwood v. Kerr–McGee Corp.*, 563 F.2d 433 (10 Cir.1977). Each of these cases involved subpoenas issued to nonparty journalists for disclosure of their confidential sources.

■ Many cases, however, apply the privilege in suits against journalists. Indeed, in *Mitchell v. Superior Court*, 37 Cal.3d 268, 279, 208 Cal.Rptr. 152, 690 P.2d 625 (1984), a case involving suit *against* two reporters for a defamatory article, the Court held "a civil action a reporter, editor, or publisher has *a qualified privilege* to withhold disclosure of the identity of confidential sources and of unpublished information supplied by such sources." (Emphasis added.) In the context of a civil libel action brought by a public figure plaintiff, courts have noted that the balance shifts somewhat more in favor of disclosure when the privilege is asserted by a media defendant. *Dangerfield v. Star Editorial, Inc.*, 817 F.Supp. 833 836 (C.D.Cal.1993); *Miller v. Transamerican Press, Inc.*, 621 F.2d 721 (5th Cir.), *reh'g denied*, 628 F.2d 932 (5th Cir. 1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981) (plaintiff in a libel suit can compel discovery of identity of confidential source of journalist defendants where knowing the informant's identity is the only way plaintiff can establish malice and prove his case by showing that defendants' news story was false or that they were reckless in relying on informant). The cases do not find that the privilege goes away merely because a publisher or a journalist is named in the civil action.

Upon further inquiry by the Court, however, plaintiff agreed that the privilege is a conditional privilege. Plaintiff also agreed that she must meet the *Mitchell* conditions and that one of the conditions that must first be established is that plaintiff has exhausted alternative sources before com-

---

**2.** Plaintiff argues that she will be sent on a wild goose chase because defendant broadly disclosed in its initial disclosure that persons with knowledge include "all law enforcement officers and agents in all law enforcement agencies that were engaged in the investiga-

tion into the disappearance of Chandra Levy." (TAB 2.) Plaintiff, however, did not seek to compel further designation of information, or correction of the disclosure under Fed.R.Civ.P. 26(e).

pelling disclosure of a confidential source. Here, plaintiff has not done so.

The failure to exhaust alternative sources is a crucial and necessary condition, and therefore, is dispositive of the motion to disclose. "The values resident in the protection of the confidential sources of newsmen certainly point towards compelled disclosure from the newsman himself as normally the end, and not the beginning, of the inquiry." *Zerilli v. Smith*, 656 F.2d at 713. Because the condition of exhaustion has not been met, the protection from disclosure remains intact.

### CONCLUSION

For the reasons discussed above, plaintiff's motion for an order overruling the confidential journalist privilege objection, and related remedies, is DENIED.

IT IS SO ORDERED.